530

TILLMAN *v.* MOODY *et al.*

No. 10647.  DECEMBER 13, 1935.

*F. R. Youngblood,* for plaintiff.
*Gibbs & Symmes,* for defendants.

HUTCHESON, Justice.  The husband of the plaintiff died as the result of an accident arising out of and in the course of his employment by the defendants.  The Department of Industrial Relations awarded the plaintiff compensation at the rate of $5.835 per week for the statutory number of weeks.  The defendants appealed to the superior court, where the award was approved.  This judgment was affirmed by the Court of Appeals.  *Moody* v. *Tillman,* 45 *Ga. App.* 84 (163 S. E. 521).  Thereafter the judgment of the Court of Appeals was made the judgment of the superior court, with the recital that $813.98 had accrued on the award to that date, and that the defendants should pay to the plaintiff $5.835 per week for 160½ additional weeks.  The judgment also provided for recovery of attorney's fees, penalties, and interest.  These items, however, are not material to the present inquiry.  Some time later, and before any payment was made on the award, the plaintiff and the defendants entered into an agreement, which was thereafter executed, whereby the defendants agreed to pay $600 in full and complete settlement of the award and judgment.  In accordance

with the settlement, the judgment of the superior court was marked "satisfied" by the clerk. The plaintiff executed to the defendants an instrument in writing, which she alleges she is informed and believes was in the nature of a receipt and release. She brought the present suit, reciting the facts just narrated, and praying that the settlement be declared void and of no effect; that the defendants be required to surrender for cancellation the ·release executed upon the payment of the sum agreed upon, and that the entry of satisfaction be expunged from the records of the court. She offered to do equity by having the $600 paid by the defendants credited upon the judgment. The court sustained a general demurrer to the petition; to which judgment exception is taken.

■ The workmen's compensation act created rights of action which were unknown to the common law. *Bussey* v. *Bishop,* 169 *Ga.* 251 (3) (150 S. E. 78, 67 A. L. R. 287). Liabilities which did not exist at common law were imposed upon employers; and employees were afforded remedies for injuries sustained by accidents arising out of and in the course of their employment, where none had existed before. The rights and liabilities of employers and employees are governed by the workmen's compensation act. The ordinary rules of law do not apply to actions arising under that statute, but the act itself constitutes a complete code of laws upon the subject. Ordinarily persons sui juris may adjust their differences upon such terms as they may be able to mutually agree upon. The policy of the law is to encourage such compromises, to the end that litigation may be avoided. This freedom of contract, however, does not exist with reference to claims for compensation arising under the workmen's compensation act, since the right of employers and employees to adjust their differences is limited and restricted by the terms of the statute. The statute provides: "Nothing herein contained shall be construed so as to prevent settlements made by and between the employee and employer, but rather to encourage them, so long as the amount of compensation and the time and manner of payment are in accordance with the provisions of this title. A copy of such settlement agreement shall be filed by the employer with the Department of Industrial Relations, and no ·such settlement shall be binding until approved by the Department." Code of 1933, § 114-106. This provision of the statute, in unmistakable terms, imposes two conditions which are essential

to a valid settlement between employer and employee: First, that the time and manner of payment must be in accordance with the provisions of the workmen's compensation act; and, second, that the agreement must be approved by the Department of Industrial Relations. The section just quoted manifestly refers to settlements entered upon before any award of compensation is made by the Department of Industrial Relations, but the same rule applies after such an award is made. It is provided by section 114-417: "Whenever any weekly payment has been continued for not less than 26 weeks, the liability therefor may, where the parties agree and the Department of Industrial Relations deem it to be to the best interests of the employee or his dependents, or where it will prevent undue hardships on the employer or his insurance carrier, without prejudicing the interests of the employee or his dependents, be redeemed, in whole or in part, by the payment by the employer of a lump sum which shall be fixed by the Department, but in no case to exceed the commutable value of the future installments which may be due under this law; provided, that the lump sum to be paid shall be fixed at an amount which will equal the total sum of the probable future payments, reduced to their present value upon the basis of interest calculated at five per centum per annum." This section not only restricts the right of the parties to contract for a lump-sum settlement of an award of compensation, but in express terms provides that such contracts must be approved by the Department of Industrial Relations.

The sections of the act just referred to are binding upon both employer and employee. It is provided, however, by section 114-111: "No contract or agreement, written, oral, or implied, nor any rule, regulation, or other device shall in any manner operate to relieve any employer in whole or in part from any obligation created by this title, except as herein otherwise expressly provided." This section deprives the employer of the right to make any contract to relieve himself in whole or in part from the obligations created by the workmen's compensation act. Under the provisions of section 114-404 of the Code of 1933, the employer is obligated to pay to the employee one half of his average weekly wages during the period of total incapacity to work, subject to the limitations imposed by that section, in case an employee is injured by an accident arising out of and in the course of his employment, which re-

sults in a total incapacity to work. Under section 114-413, if death results from an injury arising out of and in the course of employment, the employer is obligated to pay to the dependents of the deceased employee 85 per cent. of the compensation provided in section 114-404 for total disability, for a period not exceeding 300 weeks from the date of the injury. The employer is prohibited by the statute from entering upon any contract for a release from the obligation thus imposed upon him. He may discharge the obligation by a contract entered upon before any award of compensation is made, and executing such contract; but under the terms of section 114-106 the amount of compensation and the time and manner of payment must be in accordance with section 114-413, a memorandum of the agreement must be filed with the Department of Industrial Relations, and the settlement is not binding until approved by that department. Section 114-106 simply provides that the employer may voluntarily assume, and agree to meet, the obligation which the statute imposes upon him, without being ordered to do so by the Department of Industrial Relations. If the Department of Industrial Relations approves such a settlement, or if no such settlement is made and the Department of Industrial Relations enters an award against the employer, he may then contract with the employee, or the beneficiary of a deceased employee, to discharge the obligation imposed upon him by the statute in accordance with section 114-417, by redeeming the amount to be paid in weekly sums by the payment of a lump sum. Such a contract can not be made until the regular weekly payments have continued for at least 26 weeks, and when it is made it must be approved by the Department of Industrial Relations, and the lump sum to be paid must represent the total sum of the probable future payments reduced to their present value upon the basis of interest calculated at 5% per annum.

The provisions of statute to which we have referred plainly declare the public policy of the State that in case of industrial accidents the injured employee shall receive, during the period provided for, a continuation pro tanto of his weekly wages. These payments are not required to discharge a right of action on account of a wrongful injury, since in most cases the employer would not be liable at all in tort for the injury done. The purpose of requiring such weekly payments is to enable the employee to provide for

himself and family during his period of incapacity, and the law wisely recognizes that its very purpose would be defeated if in all cases the employer should be permitted to commute a future liability to a lump sum, which might soon be expended, leaving the injured employee and his dependents without means of support. It was not only to thus secure to the injured employee and his dependents a continuation of their means of support, but to avoid the probability that they might become public charges, that the law made this provision. The same policy requires a continuation of a portion of the weekly wages of a deceased employee after his death. The lawmakers doubtless realized that in many instances no real benefit would result to the family of a deceased employee from the payment of a more or less large sum of money at one time, since such benefits might soon disappear in improvident investments. These were doubtless the reasons which prompted the General Assembly to require weekly payments as compensation to the family of a deceased employee. However, we do not need to inquire into the reasons for this enactment. It is sufficient that the policy of the law is so plainly stated as to leave room for no speculation as to the legislative intent.

From what has been said, we think the workmen's compensation act deprives the parties to an award of compensation of the right to contract for a lump-sum settlement in any manner other than that provided for by section 114-417. Accordingly, if the lump-sum settlement herein dealt with was not approved by the Department of Industrial Relations, it is contrary to public policy, is not binding upon the parties, and is void. Previous adjudications by this court support the view here taken. We held, in *Department of Industrial Relations* v. *Travelers Insurance Co.,* 177 *Ga.* 669 (170 S. E. 883), that the superior court is without jurisdiction, on appeal, to approve a lump-sum settlement of an award of compensation entered by the Department of Industrial Relations. While that case related only to the jurisdiction of the superior court, the decision is based upon the provisions of the workmen's compensation act herein referred to. The opinion expressed here is in accord with rulings in other jurisdictions. In Workmen's Compensation Board *v.* Abbott, 212 Ky. 123 (278 S. W. 533, 47 A. L. R. 789), the Court of Appeals of Kentucky held that the Circuit Court of that State was without jurisdiction to approve a lump-sum

settlement of an award of compensation. In Stewart *v.* Model Coal Co., 216 Ky. 742 (288 S. W. 696), the same court held that a compromise agreement not approved by the compensation board was absolutely void. In Hartford Accident &c. Co. *v.* Industrial Com., 320 Ill. 544 (151 N. E. 495), it was held that under the Illinois workmen's compensation act the parties could not by agreement deprive the industrial commission of its jurisdiction to approve or disapprove settlements. In Roma *v.* Industrial Commission, 97 Ohio St. 247 (119 N. E. 461), it was held that a jury was without power to return a verdict fixing compensation in a lump sum, under the Ohio law. The ruling in Board *v.* Abbott, supra, is in conformity to decisions by courts of last resort in most jurisdictions. A contrary conclusion was reached in Brigham Young University *v.* Industrial Com., 74 Utah, 349 (279 Pac. 889, 65 A. L. R. 152), but the decision there was based squarely upon statutory provisions materially different from those contained in the Georgia and Kentucky statutes. The Utah court approved the conclusion reached under the Kentucky statute in the Abbott case. While the opinion of Mr. Justice Bell in *Department of Industrial Relations* v. *Travelers Insurance Co.,* supra, does not discuss the right of the parties to enter into an agreement settling an award without authority from the Department of Industrial Relations, he does call attention to the foreign authorities just cited, and to *United States Casualty Co.* v. *Smith, 34 Ga. App.* 363 (2) (129 S. E. 880), and to numerous foreign authorities, which support the conclusion stated in this opinion. Section 55 of the workmen's compensation act (Code of 1933, § 114-705) does not require a different ruling. This section simply permits the employer and the injured employee to reach an agreement as to compensation in accordance with the terms of the workmen's compensation act, and to file a memorandum of the agreement with the Department of Industrial Relations, which upon its approval by that department becomes an award of compensation. It does not authorize the parties to agree upon amounts of compensation different from those prescribed by the act, or to agree upon times and methods of payment different from those fixed by law. This section in no wise impairs the force and effect of the sections hereinbefore quoted.

■ While the petition does not allege that the agreement between the plaintiff and the defendants was approved by the De-

partment of Industrial Relations, it does not allege the absence of such approval. Therefore, construing the petition most strongly against the plaintiff, as must be done on demurrer, it should be assumed that the Department of Industrial Relations did approve the lump-sum settlement. Does this approval validate the contract? We think not. It might be said that since the award entered by the Department of Industrial Relations was on account of the death of the employee, and there could be no subsequent change in condition, the department completely lost jurisdiction of the case. It is not necessary to determine this question. Whether the department did or did not retain jurisdiction of the case, we think it had no authority or jurisdiction to approve the lump-sum settlement agreed upon. That department is not a court, but an administrative body created by the workmen's compensation act, and possessing only the authority and jurisdiction therein conferred. The only authority vested in the department to approve lump-sum settlements is that conferred by section 114-417. The authority there conferred is limited to a determination of whether or not a lump-sum settlement will be "to the best interests of the employee or his dependents," or "will prevent undue hardships on the employer or his insurance carrier, without prejudicing the interests of the employee or his dependents." In other words, in a case like the present one, the Department of Industrial Relations has no jurisdiction to determine the amount which should be paid in commutation of the weekly payments. That fact is determined by the statute itself, which expressly provides that the lump sum to be paid shall be fixed at an amount which will equal the total sum of the probable future payments, reduced to their present value at 5% interest. The department might have a degree of discretion in the case of an injured employee, since it would be necessary, before a lump-sum settlement could be approved, to determine the probable duration of the disability; but once the duration of the disability is determined, the department is without jurisdiction to apply any formula for determining the present worth of future payments other than that prescribed by the statute. In a case where an award is made on account of the death of an employee, there is no room for the exercise of any discretion by the department, since the period during which the payments are to be continued is fixed by law. It appears from the petition in the present

case that the sum of money which the plaintiff agreed to accept in settlement of the award in her favor represented less than the amount which had accrued on the award at the time of the settlement. It is therefore at once apparent that the settlement agreed upon was not in conformity to section 114-417, in that it represented an amount much smaller than she was entitled to receive under that section. It was further not in conformity to that section because the weekly payments of compensation had not been continued for any period at all. The statute expressly provides that no lump-sum settlement may be made until weekly payments of compensation have been continued for at least 26 weeks. We hold that the Department of Industrial Relations is without jurisdiction or authority to approve any lump-sum settlement not made in conformity to section 114-417; that the approval of the settlement herein dealt with by the department, if such approval was in fact made, was without effect; and that the settlement is contrary to public policy and void.

■ We think a court of equity has jurisdiction to grant the relief prayed for in this case. As we have seen, the agreement for the lump-sum settlement was contrary to public policy, and therefore void. Despite this fact, however, the judgment in favor of the plaintiff has been marked "satisfied" upon the court records, and the defendants hold a release from all liability arising under the judgment. So long as this release remains outstanding, and the entry of satisfaction remains on the records of the court, the plaintiff can not enforce her legal rights under the judgment, since the clerk would not be authorized to issue an execution on a judgment which has been marked "satisfied." Should she undertake to compel the clerk, by mandamus, to issue an execution, she might be met with the answer that the clerk could not issue such execution so long as the entry of satisfaction remained on the court records. Thus the plaintiff is without any remedy at law to enforce her rights which would be so complete and adequate as may be afforded in a court of equity. If she could obtain an execution and its levy, she might be able to meet a defense of satisfaction by proof of the facts stated in her petition, but she might have difficulty in securing the issuance of an execution in the present state of the record. We do not think the plaintiff should be required to mandamus the clerk to compel issuance of an execution, even if she could successfully maintain such

an action. In these circumstances we think a court of equity is clearly authorized to exercise its extraordinary powers to relieve the plaintiff from the effect of the contract for the lump-sum settlement which we have found to be contrary to public policy and therefore void.

■ Under the foregoing rulings the judge of the superior court erred in sustaining the general demurrer to the petition.

*Judgment reversed. All the Justices concur, except Gilbert, J., who dissents.*