25266, 25267, 25268.   ATLANTA COCA COLA BOTTLING
COMPANY et al. v. GATES (three cases).

Argued July 15, 1969—Decided December 4, 1969—
Rehearing denied December 18, 1969.

*Neely, Freeman & Hawkins, Edgar A. Neely, Jr.,* for appellants.

*Armstrong & Fuller, Ronald J. Armstrong,* for appellee.

Frankum, Justice.   These appeals came to this court as the result of litigation concerning an ex parte judgment rendered against the employer and insurance carrier for amounts of weekly instalments of workmen's compensation allegedly unpaid and due under an award of compensation made by the State Board of Workmen's Compensation on account of total incapacity of the employee to work.   Only one question of law is presented, to wit: Where an employer is obligated to pay compensation to an employee under the provisions of *Code Ann.* § 114-404 (that is for total incapacity to work) pursuant to an

agreement entered into between the employee and the employer and approved by the board, may the obligation of the employer to continue making such payments be terminated by the filing with and approval by the State Board of Workmen's Compensation of a supplemental agreement duly executed by the employer and the employee, declaring that the employee returned to work on a specified date at the same weekly wage and that liability for temporary disability ceased on that date?

One of the purposes for the passage of the Workmen's Compensation Act was to facilitate and simplify the settlement of disputes arising between employees and employers respecting accidental injuries sustained by employees on the job. " 'The design of the entire Workmen's Compensation Act is a speedy, inexpensive, and final settlement of the claims of injured employees. Its procedure shuns protracted and complicated litigation." *Gravitt v. Ga. Cas. Co.*, 158 Ga. 613, 616 (123 SE 897). To that end the Act provides that settlements are to be encouraged as long as the amount of compensation and the time and manner of payment are in accordance with the provisions of the Act. *Code Ann.* § 114-106. To further facilitate that purpose and to provide overall supervision by the board, the Act further provides: "If, after 14 days from the date of the injury, or at any time in case of death, the employer and the injured employee or his dependents reach an agreement in regard to compensation under this Title, a memorandum of the agreement in the form prescribed by the State Board of Workmen's Compensation shall be filed with the board for approval as herein provided; otherwise such agreement shall be voidable by the employee or his dependents. If approved by the board, thereupon the memorandum shall for all purposes be enforced by decree or judgment of the superior court, as herein specified." *Code* § 114-705. Under this Code section it is now well established that the order of the State Board of Workmen's Compensation approving an agreement for the payment of compensation entered into between an employer and an employee has the same force and effect, and is tantamount to, an award made after a full hearing before the board and that the provisions of such an approved agreement providing for the payment of com-

pensation under the terms of the Workmen's Compensation Act are in the absence of fraud, accident, or mistake, binding on the parties. *Rourke v. U. S. Fidel. &c. Co.*, 187 Ga. 636 (1) (1 SE2d 728); *Liberty Mut. Ins. Co. v. Morgan*, 199 Ga. 179, 181 (33 SE2d 336); *Lumbermen's Mut. Cas. Co. v. Cook*, 195 Ga. 397 (24 SE2d 309).

The section of the Workmen's Compensation law immediately following the above referred to section relates to "Hearings Regarding Disagreements." It provides in part: "If the employer and the injured employee or his dependents fail to reach an agreement in regard to compensation under this Title, or if they have reached such an agreement which has been signed and filed with the State Board of Workmen's Compensation, and compensation has been paid, or is due in accordance therewith, and the parties thereto *then disagree as to the continuance of any weekly payment under such agreement,* either party may make application to the board for a hearing in regard to the matters at issue, and for a ruling thereon." *Code Ann.* § 114-706. (Emphasis supplied.) It is hardly conceivable what language the legislature could have employed to indicate more clearly an intention that the parties to an agreement for the payment of compensation might thereafter agree as to discontinuance of weekly payments under such prior agreement, formalize such agreement by reducing it to writing, signing the same, and submitting it to the board for the board's approval. It is the position of the appellees, in substance, that the legislature, while providing for the execution, filing and approval of agreements respecting the payment of compensation, and for their binding effect as res judicata, did not intend that agreements terminating weekly payments could ever be binding even though approved by the board. But, it is illogical to say that the legislature would have provided for the execution, approval and binding effect of agreements for the payment of compensation, and provided for the execution and approval of agreements for the discontinuance of the payments of compensation without also intending that such agreements would be equally binding upon the parties. To conclude that the legislature intended to reach such an illogical result as contended for by the appellee

here offends the conscience, and we will not, when thus directly presented with the question for the very first time, so construe the Act.

The foregoing construction is not inconsistent with the previous pronouncements of this court touching on this subject matter. It must be borne in mind in this case that the compensation provided for by the original agreement between the parties was compensation for total incapacity to work under the provisions of *Code Ann.* § 114-404. That section contemplates the payment of weekly compensation to the employee "during such total incapacity." It fixes a limit on the dollar amount of compensation that may be paid per week, a limit on the number of weeks that compensation may be paid, and a limit on the gross amount of compensation which may be paid to an employee on account of total incapacity to work. It is clear that these limitations are intended to apply only in those cases where the total incapacity is permanent, and that the legislature never intended that an employee should continue to be compensated thereunder after his disability has terminated and he has gone back to work. Thus, when the parties enter into an agreement for the payment of compensation at a stated weekly rate, payable from and including a specified date and to continue "until terminated in accordance with the provisions of the Workmen's Compensation law of the State of Georgia," such language necessarily means that such compensation shall not continue beyond the period of "such total incapacity" to work. It may be conceded that the board has no jurisdiction to modify, alter or amend an award resulting from the approval of an agreement except upon a change of condition, but it was not within the contemplation of the legislature that the parties might not thereafter agree between themselves that a change of condition has occurred and submit that agreement to the board and have the board approve the same and thereafter be bound by it as firmly as they were bound by the prior agreement regarding the payment of compensation.

The record shows in this case that the original agreement for the payment of compensation was executed by the parties on October 18, 1966, and approved by the board on October 27, 1966. The injury occurred on September 7, 1966. The em-

ployee returned to work on September 12, 1966, and again became disabled on September 22, 1966, but returned to work the next day and again became disabled on September 26, 1966. The original agreement provided for the payment of compensation beginning on the 27th day of September, 1966, and it appears that thereafter the employee worked intermittently until January 4, 1967, being paid compensation for all those times when he was out of work on account of disability resulting from the injury. Several supplemental memoranda of agreement as to the payment of compensation, on forms prescribed by the board, were signed by the parties and submitted to the board for approval, the final one reciting that the employee returned to work on the 4th day of January, 1967, at the same weekly wage as before and that liability for temporary total disability ceased on that date. This agreement was signed by the employee and on behalf of the employer and the insurance carrier and was filed with the board. Such agreement, when thus filed, was the equivalent of a joint request by the parties that the board adjudicate that there had been a change in the employee's condition. It was approved by the board on January 12, 1967, as had been all the rest of the supplemental agreements. Under the principles of res judicata this latter agreement is just as binding on the employee, once it received the approval of the board, as any of the preceding agreements providing for the payment of compensation and approved by the board were binding on the employer and insurance carrier. If the employee contended that he suffered further disability on account of the injury he had but to apply to the board at any time within two years for a hearing on account of a change of condition. *Code Ann.* § 114-709. This he did not do, and he cannot now seek to avoid the effects of the contract which he signed agreeing that he had received all the compensation to which he was entitled under the original award and all subsequent awards.

Nothing contained in any previously decided case in this court requires a different result in this case. The broadest language intimating a contrary view is found in the case of *Sears, Roebuck & Co. v. Wilson,* 215 Ga. 746, 751 (113 SE2d 611). It is

sufficient to point out however, that in that case no question was before the court concerning the binding effect of a supplemental agreement terminating the payment of compensation as is here involved, and further, since that case is not a full bench decision (Justice Mobley's opinion, though marked a "special concurrence" is, in effect, a dissent on the very point here involved), it does not require a different result.

It follows that the judge of the trial court erred in rendering the judgment appealed from in each of these cases, and the judgments must therefore be reversed.

*Judgments reversed. All the Justices concur, except Grice, Nichols and Felton, JJ., who dissent.*

GRICE, Justice, dissenting. I dissent because, in my view, this case is governed by the procedural principles enunciated in *Sears, Roebuck & Co. v. Wilson,* 215 Ga. 746, supra, which are required by *Code Ann.* § 114-709.

NICHOLS, Justice, dissenting. I dissent from the judgment in this case on the sole ground that an award or agreement to pay compensation is res judicata and a later agreement not to pay compensation—which is without consideration—whether it has received the technical approval of the State Board of Workmen's Compensation or not is a nullity.

In *Cardin v. Riegel Textile Corporation,* 217 Ga. 797 (125 SE2d 62), this court in a full bench decision held that an agreement in which it was agreed that the claimant had experienced a change of condition and provided for the payment of compensation was res judicata and could only be modified by a later award based on a hearing for a change in condition. In view of the facts of the case, this necessarily meant in the absence of a further agreement between the parties.

Under the holding by a majority of this court in *New Amsterdam Cas. Co. v. McFarley,* 191 Ga. 334 (12 SE2d 355), an award denying compensation cannot be reviewed upon an application for a hearing on a change of condition. In *Lumbermen's Mut. Cas. Co. v. Cook,* 195 Ga. 397 (24 SE2d 309), the holding in *New Amsterdam Cas. Co. v. McFarley,* supra, was explained and the true rule apparently established that a first award, unappealed from, in the absence of an agreement to the

contrary, denying compensation forecloses the employee from ever receiving compensation, but once an award is rendered granting compensation then until the maximum period for paying compensation has expired (subject to other time limitations in the Act) a new award may be rendered again awarding compensation although in the interim an award has been rendered stopping compensation.

In *Complete Auto Transit v. Davis*, 106 Ga. App. 369 (126 SE2d 909), in a decision concurred in by all nine judges of the Court of Appeals (certiorari denied, 106 Ga. App. 886), Judge Eberhardt, speaking for that court, pointed out once again that an employer is completely protected when an employee returns to work whether or not a new award is then obtained and whether or not the employee signs a form stating that he is no longer disabled and no longer entitled to compensation.

Of what effect is an agreement under such circumstances? As has been shown, no benefit flows to the employer as he is already protected. No benefit flows to the employee since he is shut out if such agreement is valid, and must apply to the board if he is not as well as he thinks he is and cannot continue to work. The return to work is no consideration since the employee only receives his wages from such time forward for labor performed.

The "agreement" is nothing more than a piece of paper signed by all parties giving no benefit to the employer or employee and at most being a detriment to the employee without any consideration whatever, and therefore a nullity.

FELTON, Justice, dissenting. 1. In *Home Acc. Ins. Co. v. McNair*, 173 Ga. 566 (161 SE 131), in a unanimous decision by the Supreme Court, Justice Hines, for the court, stated at page 569: "Such an award is subject to review by the industrial commission upon the application of either the employer or the employee whenever either brings himself within the terms of section 45 of this Act. By this section the industrial commission can upon its own motion *before judicial determination,* or upon the application of any party at interest on the ground of a change in condition, at any time *review any award,* and, on such review, *may make an award* ending, diminishing, or increasing the compensation previously awarded. . . In all other respects the

award concludes both the employer and the employee, and is res adjudicata as to their rights." (Emphasis supplied.) This case, insofar as we know, has never been reversed or criticized. The res judicata rationale is the basis for the rule that on a hearing on change in condition the employee may not be charged, nor the employer credited, with moneys paid under the first or previous award or agreement.

In *Guess v. Liberty Mut. Ins. Co.*, 219 Ga. 581 (134 SE2d 783), Justice Candler, for the court, stated, at p. 582: "And under Rule 17 of the compensation board which was adopted pursuant to and in accordance with § 114-709, an employer or his insurance carrier may discontinue payment of an award for disability compensation when the employee returns to work and an *application for leave to stop payment* of such compensation *is granted by the board* under the provisions of such rule. So long as a judgment or decision of the board fixing disability benefits is permitted to stand as rendered, there is nothing for the court to do but enforce it." (Emphasis supplied.) This statement simply reiterates the rulings repeated by this court time after time that after the *first* agreement to pay compensation or the first award is made, the first agreement or award is res judicata until another award (after a hearing) upon application by either party for a hearing on a change in condition. *Sears, Roebuck & Co. v. Wilson*, 215 Ga. 746 (113 SE2d 611) and cit. Appellants attempt to put the rulings of this court referred to above in a bad light when the rulings are clear and contain no inherent defects. What seems to confuse some is that the employers or carriers in similar cases have simply failed to take advantage of the one step which the decisions and the law provide for their protection in back-to-work cases and that is to apply for permission to stop payments under the original agreement or award and file an application for a hearing on a change in condition. This was not done in these cases, but every time an employee would go back to work the parties would sign an agreement that the employee was back at work and that all compensation was paid and the board approved each one. The procedure has been condemned and disallowed innumerable times. See cases cited in the *Sears, Roebuck &*

*Co. v. Wilson* decision, supra. Every one of the supplemental agreements violated the provisions of *Code* § 114-111: "No contract or agreement, written, oral, or implied, nor any rule, regulation or other device, shall in any manner operate to relieve any employer in whole or in part from any obligation created by this Title, except as herein otherwise expressly provided. (Acts 1920, p. 175.)"

The whole trouble with appellants' case is that their legal position in this case is based on an erroneous and unfounded premise, to the effect that just *any* agreement entered into by an employee and employer which is approved by the board is effective from its date. This is the heart of the case. The premise is false and the whole scheme of arguments falls of its own lack of support, legislative or judicial. The law is that only the *first agreement,* agreeing upon and fixing compensation, becomes equivalent to a judgment and is res judicata. Nearly every reported case says this in plain English and all go on to say, in effect, that any later agreement without a hearing on a motion based on change in condition, even though approved by the board, is ineffective to change the initial agreement. The appellants cite *Lumbermen's Mut. Cas. Co. v. Cook,* 195 Ga. 397 (24 SE2d 309) and say: "Perhaps the most telling language in the case appears on page 399 and is as follows: 'By entering into the agreement and allowing it to receive the approval of the board, the parties thereby preclude themselves from thereafter contradicting or challenging the matters thus agreed upon.' " In this one sentence the appellants are saying that *any* agreement may be the basis for an award of the board and that an approval of an agreement by the board is equivalent to an award in the absence of an application for a hearing on a change in condition. These things are simply not the law. In *Lumbermen's Mut. Cas. Co. v. Cook,* supra, the court ruled that the *first* agreement, approved by the board, was the law of the case and the case does not hold that just *any* approved agreement other than the first is res judicata until changed by a later award. This well-understood law was understood by the General Assembly when it passed an Act to change the law. Ga. L. 1968, pp. 3, 8 (*Code Ann.* § 114-709). Reference is made to

the three dissents in *Guess v. Liberty Mut. Ins. Co.*, 219 Ga. 581, supra. It would seem that the ground of the unwritten dissents was merely on the one question decided in that case and not on any of the questions in this case. The dissents in that case simply mean that the three dissenters thought that the employee who chose to go to work for another employer while entitled to compensation from the former employer should not receive both compensation and wages. The writer dissented in the Court of Appeals on the same point, but he does not know of any law that precludes his and this court's following full-bench decisions on the questions in this case. *Home Accident Ins. Co. v. McNair*, 173 Ga. 566, and *Lumbermen's Mut. Cas. Co. v. Cook*, 195 Ga. 397, cited in *Guess v. Liberty Mut. Ins. Co.*, supra. In *Murdock v. Perkins*, 219 Ga. 756 (135 SE2d 869) at pages 762 and 763, Presiding Justice Mobley, for the court, wrote: "This court in *Gravitt v. Georgia Gas Co.*, 158 Ga. 613 (123 SE 897), held that the Georgia Industrial Commission . . . , being an administrative body, possesses only such jurisdiction, powers, and authority as are conferred upon it by the legislature, or such as arise therefrom by necessary implication to carry out the powers granted, and that in the absence of specific authority to reopen or rehear a case on its merits, in which a decree has been entered, the board does not have authority to reconsider the case except on a change in condition, which is specifically authorized by statute. *Code* § 114-709 (Sec. 45 of Ga. L. 1920, pp. 167, 191). To the same effect see: *New Amsterdam Cas. Co. v. McFarley*, 191 Ga. 334 (12 SE2d 355); *Lumbermen's Mutual Cas. Co. v. Cook*, 195 Ga. 397, 400 (24 SE2d 309); *Liberty Mut. Ins. Co. v. Morgan*, 199 Ga. 179 (33 SE2d 336); *Bender v. Anglin*, 207 Ga. 108, 114 (60 SE2d 756)."

I respectfully submit that, having construed the legislative Act in the several full-bench decisions cited herein, this court now is without jurisdiction to reconstrue them contrary to the construction already made. The sole recourse for a change in the statute is exclusively to the General Assembly.

2. The only basis for the majority ruling is that the legislature intended that *any* agreement after the first should supersede the first without a hearing or facts showing an investigation,

merely because *Code Ann.* § 114-706 provides that when there is a disagreement as to compensation either party may request a hearing to settle the disagreement. To my mind it is illogical to conclude that if a hearing is necessary in case of a dispute a hearing is not necessary (to change the initial agreement) where there is no dispute.

The above illogical conclusion is shocking, but the construction necessarily put on *Code Ann.* § 114-709 is more so. The provision in this Code section for a review of *any* award or *any* settlement is construed to mean that the parties may make, in addition to an original agreement for the payment of compensation, additional agreements which change the initial agreement and that no new award is necessary. This provision for review of any agreement is a broad provision prescribing the authority of the board to review the thousands of awards and agreements in the future, but when the first agreement or award was made after that Code section became law, the power of the board was concentrated upon that agreement in the one case because that event, contemplated by the general authority to review all subsequent award and agreements, polarized the authority of the board as to the one case. The intent of the legislature, as shown by the various decisions on the subject, is that the *first award* or *approved agreement* becomes res judicata as to the degree of injury and amount of compensation until changed by an award on a hearing on change in condition. So, both of the reasons relied on by the majority, one expressed in the opinion and the last one implied, are without any basis whatsoever. No legal legerdemain can show any provision for the making of such agreements as we have in this case. I repeat, any mere agreement, after an original award or approved agreement, changing the agreement, is contrary to *Code* § 114-111.

3. It stands to reason that an injured employee receiving compensation under an award or agreement approved by the State Board of Workmen's Compensation would make every reasonable effort to return to work as soon as he could safely do so. The Court of Appeals has several times held that *the mere fact* of an employee's return to work would not authorize a finding that he was no longer entitled to compensation if in fact

he found that he was not able to continue on his job, due to his injuries, in his regular work or could only do lighter work. *Liberty Mut. Ins. Co. v. Archer,* 108 Ga. App. 563 (134 SE2d 204); *Bell v. Liberty Mut. Ins. Co.,* 108 Ga. App. 173 (132 SE2d 538). These rulings insured protection to the employees where there was an application for a hearing on change in condition by the employer or where the employee signed a back-to-work agreement such as we have in this case which was handed to him by someone to sign when he went back to work, and had a rubber stamp approval and nothing more. In *Employers &c. Assurance Corp. v. Whitlock,* 111 Ga. App. 440 (142 SE2d 77) there were two "back-to-work" agreements. The first one contained an agreement that liability for temporary total disability ceased on April 22, 1963, when the employee went back to work. He then quit work again and signed an agreement to the effect that he (again) became totally disabled and was entitled to compensation for temporary total disability. Then later the employee went back to work the second time and signed another agreement stipulating that he was no longer suffering a temporary total disability. The first time anyone thought that an employee could agree the second time that he was or was not suffering a compensable injury was when the practice was started by the compensation board when injured employees went back to work. The idea was at first that the employee could agree that disability had ceased (or a part of it, usually). The purpose was to avoid hearings on the question of the employee's condition. The plan was to have the employee who tried to return to work, we assume, permanently, agree that disability had ceased. That got rid of the hearing. The plan further was that if the employee could not do his work, he was induced to sign another agreement that he was again disabled as much as he was when the initial agreement for compensation was signed —this too, without the trouble and inconvenience of a hearing so that when the employee came back to work again he could sign another agreement that his disability had disappeared again. The majority has said that this procedure is authorized by law. This is a belated authorization of something that was dreamed up out of thin air and, up to the decision in this case, has been

frowned upon in numerous cases by the Court of Appeals and whole court decisions by this court which I have been taught to believe were binding even on this court. I think we all agree that the initial agreement for the payment of compensation is equivalent to an award.

Now what is the situation when there is just one return to work? We could rest our case on the full-bench decisions of this Supreme Court which have construed the Code to mean that the first award or agreement cannot be inquired into or changed, except by an application for a hearing on a change in condition, and a hearing, and an award on the question thereby raised. However, as to the type of agreements we are dealing with in these cases, there is another reason why these agreements are insufficient to authorize a cessation of compensation completely. The original agreement was for the payment of compensation for temporary total disability. A return-to-work agreement which stipulates that the employee no longer suffers a temporary total disability does not cover any *lesser* disability which the employee might be suffering. So by such an agreement the employee does not what I call, "gamble away" his entire rights under the law. So, even if the majority is right that *any* agreement is as good as an award, the agreements in these cases being lacking in completeness can mean nothing except that the employee is not entitled to receive compensation and wages equal to what he had been receiving. I will not undertake to say what other degrees might exist which are lesser than temporary total disability, but I do know one, and that is partial permanent or maybe temporary partial. *Noles v. Aragon Mills,* 116 Ga. App. 560 (158 SE2d 261).

This court has consistently denied petitions for certiorari in about seven cases, stretching from volume 107 of the Court of Appeals through Volume 117, as hereinafter shown, all of which involve the identical questions involved in this case. At least they are undistinguishable.

In *Nationwide Mut. Ins. Co. v. Hamilton,* 112 Ga. App. 452 (145 SE2d 645) one division of the Court of Appeals, Judge (now Justice) Frankum, concurring, held: "It follows that, if the parties to the original award can enter into a new agreement

effecting a change in the compensation payable, the approval of such an agreement by the board is not authorized unless the agreement stipulates facts showing that the claimant's condition has changed since the original award or agreement. Accord *Sears Roebuck & Co. v. Wilson,* 215 Ga. 746, 751 (113 SE2d 611); *Fidelity & Cas. Co. v. Parham,* 218 Ga. 640, 642 (129 SE2d 868)." Certiorari was denied in the above case. 112 Ga. App. 896. Certiorari was also denied in *Stone Mountain Grit Co. v. Christian,* 115 Ga. App. 102 (Id. 881). In that case it was held (quoting from *Nationwide Mut. Ins. Co. v. Hamilton,* supra): "Assuming arguendo that parties to an original compensation award or agreement can enter into a new agreement effecting a change in the compensation payable, the approval of such an agreement by the Board of Workmen's Compensation is not authorized unless the agreement stipulates facts showing that the claimant's condition has changed since the original award or agreement."

Certiorari was also denied in the following cases involving the question in this case: *Commonwealth Ins. Co. v. Arnold,* 112 Ga. App. 140 (Id. 896); *Gentry v. Ga. Cas. & Surety Co.,* 107 Ga. App. 888 (Id. 891); *James v. General Motors Corp.,* 107 Ga. App. 588 (Id. 891); *Armour & Co. v. Youngblood,* 107 Ga. App. 505 (Id. 891); *Simpson v. Travelers Ins. Co.,* 117 Ga. App. 43 (Id. 880).

The principle with respect to res judicata as to the binding effect of second agreement between the parties approved by the board, as urged by the dissent in *Employers &c. Assurance Corp. v. Whitlock,* 111 Ga. App. 440, supra, is not applicable to an agreement and final settlement receipt, as we have in this case, which is presumably based solely on the fact that the employee went back to work and earned as much as before the injury. The approval of such agreements is a practice by the board to accomplish indirectly what this court has held in the cases cited above it cannot do directly, to wit, hold that a return to work at the same or higher wages is conclusive as to the fact of complete recovery insofar as ability to work and earn compensation is concerned. In order for such an agreement as is here involved to be binding as res judicata, the board should pass an order

or have the agreement state that it is based on a thorough investigation of the employee's condition at the time he returns to work. Otherwise, employees who wish to try to return to work even on a trial basis would be discouraged from doing so because of the fear that, if it turned out that they were not able to continue to work at a wage equal to their former wage, they would completely forfeit their claim to all compensation if they could only do light work at a lesser wage or no wage at all. Such a result is too harsh to be tolerated based on a superficial agreement having no basis in fact except that of a mere return to work at the same or higher wage.

Chief Justice Almand and Justice Mobley concurred in the opinion in *Fidelity & Cas. Co. v. Parham,* 218 Ga. 640, 641 (129 SE2d 868), wherein it was stated: "There is no doubt but that a settlement by the employee and the employer, approved by the board as contemplated by *Code* §§ 114-106 and 114-705, and unappealed, is conclusive as to the employee's condition. 'That an employee has suffered an injury . . . may be conclusively established by an agreement filed with and approved by the Industrial Board (*Code* § 114-705), or by an award of the board after hearing evidence (*Code* §§ 114-706, 114-707, 114-708). Regardless of which of these two methods is employed, it is a decision of the Industrial Board. . . The decision or judgment of the board in the one case rests upon and is supported by the agreement of the parties, while in the other it rests upon evidence introduced at the hearing. By entering into the agreement and allowing it to receive the approval of the board, the parties thereby preclude themselves from thereafter contradicting or challenging the matters thus agreed upon. *The only provision of law for further consideration of a case thus disposed of by an approved agreement is a review upon a change in condition,* as provided in the *Code,* § 114-709. The inquiry authorized by law to be made on the review is strictly limited to a change in condition. The condition as it existed at the time of the agreement is settled by that agreement, and can not be redetermined upon the review.' *Lumbermen's Mutual Casualty Co. v. Cook,* 195 Ga. 397, 399 (24 SE2d 309). See also *Rourke v. U. S. Fidelity &c. Co.,* 187 Ga. 636(1), 638 (1 SE2d 728)." (Emphasis supplied.)

Unanimous, binding decisions by this court through the years demand the conclusion that what the law means is that the board does have the power to review *any* award or agreement to pay compensation only upon application for a hearing on change in condition. But that only means, according to the decisions above referred to and the above cited, that, after an agreement or award is made, the power of review is confined to that one award or agreement. There is absolutely no room whatever for any other conclusions. Any other conclusion goes into the teeth of the Code and the unanimous decisions of this court by which its members should be bound. In my opinion those not holding such a view confuse a back-to-work situation with a review of an award or settlement. In a regular review of an award or settlement a hearing is contemplated because the question involved is whether a solemn judgment is to be changed. In the return to work situation (such as we have here) the question is not whether a judgment is to be considered and changed, but only that the employee cannot receive both compensation and wages as high as before. The solution is just as simple as that.

In *Globe Indem. Co. v. Lankford,* 35 Ga. App. 599 (134 SE 357), it was held that the department of industrial relations has no power or jurisdiction to approve a settlement so as to preclude an opening of the case upon a change in condition.

In *Department of Industrial Relations v. Travelers Ins. Co.,* 177 Ga. 669, 672 (170 SE 883), after citing the above ruling, this court said: " . . . and under the general rule to which we have just adverted, the superior court, on appeal, would be limited in like manner." In the above case Justices Gilbert and Russell dissented. It seems that Justice Russell wrote no dissent. Justice Gilbert stated that his was not a dissent from the above ruling. However, a *full bench* in *Liberty Mut. Ins. Co. v. Morgan,* 199 Ga. 179 (33 SE2d 336) decided that the Compensation Board could not hold a hearing to decide which of two insurance companies was the one covering the employer after 30 days from agreement signed by one insurance carrier in view of the facts.

In *Liberty Mut. Ins. Co. v. Morgan,* supra, this court *ap-*

*proved,* among many others, *Rourke v. U.S.F. & G. Co.,* 187 Ga. 363 (1 SE2d 728), a full-bench case. *Rourke* affirms *Tillman v. Moody,* 181 Ga. 530 (182 SE 906). *Tillman v. Moody,* supra, is a full-bench case. This case really wraps up the instant case. *Tillman* approves *Department of Industrial Relations v. Travelers Ins. Co.,* 177 Ga. 669, supra, which makes the latter case now a full-bench decision. A careful reading of these cases, especially *Tillman,* should control us in the instant case.

Here are some examples of what *Tillman* holds: "This section [*Code Ann.* § 114-111] deprives the employer of the right to make any contract to relieve himself in whole or in part from the obligations created by the Workmen's Compensation Act. . . . The employer is prohibited by the statute from entering upon any contract for a release from the obligation thus imposed upon him. He may discharge the obligation by a contract entered upon *before any award of compensation is made,* and executing such contract . . . From what has been said, we think the Workmen's Compensation Act deprives the parties to an award of compensation *of the right to contract for a lump-sum settlement in any manner other than that provided for by section* 114-417. Accordingly, if the lump-sum settlement herein dealt with was not approved by the [Workmen's Compensation Board], it is contrary to public policy, is not binding upon the parties, and is void. . . [§ 114-705] simply permits the employer and the injured employee to reach an agreement as to compensation in accordance with the terms of the Workmen's Compensation Act, and to file a memorandum of the agreement with the [Workmen's Compensation Board], which upon its approval by that [board] becomes an award of compensation. *It does not authorize the parties to agree upon amounts of compensation different from those prescribed by the Act, or to agree upon times and methods of payment different from those fixed by law.* . . *We hold that the [board] is without jurisdiction or authority to approve any lump-sum settlement not made in conformity to section 114-417;* that the approval of the settlement herein dealt with by the [board], if such approval was in fact made, was without effect; and that the settlement is contrary to public policy and void." (Emphasis supplied.) *Tillman v. Moody,* supra, at pages 532-537.

These cases, and others cited, mean that such agreements as are authorized by the majority are contrary to the rulings by unanimous decisions by this court for the reason that such agreements after the first agreement or award are beyond the power of the board to approve because they allow an agreement (other than the first) which takes away from the employee the benefits given to him by the first agreement and puts upon him the burden of showing a change in condition when the employee should be entitled to the enforcement of the initial agreement without having to do anything. The board had no authority to approve the back-to-work agreements in this case because they took away from the employees' rights which had accrued to them under the law—rights which could only be taken from them by a procedure required by law—a petition for a hearing on change in condition.

The unanimous decisions of this court, herein cited, explain why this court has denied certiorari in so many cases wherein the Court of Appeals has decided the identical questions here involved in accordance with this dissent.

The majority opinion in *Guess v. Liberty Mut. Ins. Co.*, 219 Ga. 581, supra, reaffirms the pre-existing law, that the original award must be complied with until it is paid or is changed or modified by a new award made after a change in condition hearing, as provided by the compensation Act. The only reasonable construction of the basis of the unexpressed three-justices minority opinion is that they do not think that the employee who accepts employment from a different employer, earning as much or more than he was earning at the time of his injury, should continue to receive compensation, even though the employer has not filed an application for a change in condition hearing, as the majority opinion requires. The *Guess* case involved only a disqualification to receive both compensation and wages at the same time. Thus, as to the main principle of law therein reaffirmed, the *Guess* case is a full-bench decision which must be applied and followed. A decision can be a full-bench one where any special concurrences (and dissents) are on a different basis from the principal holding of the case. *Ward v. Big Apple Super Markets*, 223 Ga. 756, 757 (158 SE2d 396).

Even if the *Guess* case not be considered a full-bench decision, however, it should be followed for the reasons which follow. In *Cobb v. State,* 187 Ga. 448, 452 (200 SE 796), this court stated: "Where a ruling made by an able bench, after full argument by able counsel, has been followed and applied in divers cases, and has been left unmolested by the General Assembly, it should not, unless for impelling reasons, thereafter be changed by the court. The application of the doctrine of stare decisis is essential to the performance of a well-ordered system of jurisprudence. In most instances, it is of more practical utility to have the law settled and to let it remain so, than to open it up to new constructions, as the personnel of the court may change, even though grave doubt may arise as to the correctness of the interpretation originally given to it."

The *Cobb* case, supra, together with Ga. L. 1896, p. 42 (*Code* § 6-1611), illustrates the policy of this State to have a rule as to overruling unanimous decisions by a unanimous court in order to put some consistency, uniformity and stability in the principle of stare decisis for the good of the bar and the public. That this court adheres to that policy is illustrated by the fact that, even after the authority for regulation governing the manner in which this court could hear and determine cases was vested, by the 1945 Constitution (Art. VI, Sec. II, Par. VII; *Code Ann.* § 2-3707), in this court, rather than in the legislature (thereby nullifying *Code* § 6-1611), *this court has given effect to that policy by requiring the concurrence of seven Justices to overrule unanimous decisions.* See *Ward v. Big Apple Super Markets,* 223 Ga. 756, supra, p. 764.

However, this court, which now has self-regulatory authority, *has not yet formulated a rule with reference to the overruling of a majority opinion case.* I think that a rule should be adopted to the effect that a majority opinion case (hence, all cases hereafter) also *shall not be overruled except by a full bench of seven Justices.* A mere majority opinion of this court is one by which all trial courts are bound as well as the Court of Appeals. Without such a rule as I suggest, the courts which are bound by majority opinion cases are as a ship without a rudder, never knowing when another majority opinion will upset

the previous majority opinion judgments. Considering the number of courts involved, it can easily be seen how the said courts and the public can feel more secure in their rulings and dealings if my suggested rule is adopted. It is true that the necessity of the occasional overruling of a case by this court is unfortunate, but it is not frequent. It cannot be avoided, but the requirement of doing it by unanimous action of the court would provide more stability than to have the law always in a state of flux because of the likelihood of changes by other mere majority opinions. I feel sure that the judges of the trial courts and the Court of Appeals and the citizens of this State will welcome the rule which I suggest, which is in accordance with the well recognized and implemented public policy of the State.

An example of how much precaution the law requires in the event of a compromise agreement between employee and employer is seen in *Proctor v. Dixie Bell Mills, Inc.*, 113 Ga. App. 787, certiorari denied, Id. 887.