S97A2019. ABERNATHY v. CITY OF ALBANY.
(495 SE2d 13)

CARLEY, Justice.

While employed as a park maintenance supervisor for the City of Albany, Joel Abernathy suffered a psychic trauma which was not preceded or accompanied by a physical injury. Asserting a disability resulting from this psychic trauma, Abernathy sought workers' compensation benefits. The Administrative Law Judge denied the claim, because Abernathy suffered no physical injury. The Appellate Division adopted this award and the superior court affirmed. The Court of Appeals denied Abernathy's application for a discretionary appeal, but we granted certiorari to address the question of whether a claimant is entitled to benefits under the Georgia Workers' Compensation Act (Act), OCGA § 34-9-1 et seq., for psychic trauma and disability not preceded or accompanied by a physical injury.

OCGA § 34-9-1 (4) defines a compensable "injury" under the Act and, unless the claimant suffers an "injury" as thus defined, he is not entitled to a recovery of benefits. *Covington v. Berkeley Granite Corp.,* 182 Ga. 235 (184 SE 871) (1936). Heretofore, we have construed a compensable "injury" under OCGA § 34-9-1 (4) as "a discernible physical 'injury'. . . ." *Southwire Co. v. George,* 266 Ga. 739, 741 (470 SE2d 865) (1996). In accordance with this definition of a compensable "injury," the long-standing rule in this state is that a psychological injury is compensable only "if it arises ' "naturally and unavoidably" . . . from some discernible physical occurrence.' [Cit.]" *Southwire Co. v. George,* supra at 741. Thus,

> a claimant is entitled to benefits under the Workers' Compensation Act for mental disability and psychic treatment which, while not necessarily precipitated by a physical injury, arose out of an accident in which a compensable

physical injury was sustained, and that injury contributes to the continuation of the psychic trauma. The physical injury need not be the precipitating cause of the psychic trauma; it is compensable if the physical injury contributes to the continuation of the psychic trauma.

*Southwire Co. v. George*, supra at 741-742. This limited construction of a compensable "injury" as defined in OCGA § 34-9-1 (4) is entirely consistent with the limited definition given to a compensable "injury" under our common law of negligence. In a common law negligence action, as in a workers' compensation proceeding, "the impact which will support a claim . . . for emotional distress must result in a physical injury." *OB-GYN Assoc. of Albany v. Littleton*, 259 Ga. 663, 666 (2) (A) (386 SE2d 146) (1989). The issue presented for resolution in this appeal is whether we will adhere to this consistency in the statutory and common law definitions of a compensable "injury" or depart therefrom by broadening the definition of OCGA § 34-9-1 (4) so as to allow a recovery of workers' compensation benefits for psychic trauma and disability not preceded or accompanied by a physical injury.

The recoverability of workers' compensation benefits is strictly a matter of statutory construction, because there is no common law right to such benefits. Compare *OB-GYN Assoc. of Albany v. Littleton*, supra. "The ordinary rules of law do not apply to actions arising under that statute, but the act itself constitutes a complete code of laws upon the subject." *Tillman v. Moody*, 181 Ga. 530, 531 (1) (182 SE 906) (1935). The applicable rules of statutory construction provide that,

> "[o]nce the court interprets the statute, 'the interpretation . . . has become an integral part of the statute.' [Cits.] This having been done, (over a long period of history) any subsequent 'reinterpretation' would be no different in effect from a judicial alteration of language that the General Assembly itself placed in the statute. The principle is 'particularly applicable where an amendment is presented to the legislature and . . . the statute is amended in other particulars.' " *Walker v. Walker*, 122 Ga. App. 545, 546 [(178 SE2d 46)] (1970).

*Mitchell v. State*, 239 Ga. 3, 6 (2) (235 SE2d 509) (1977). Over the years since OCGA § 34-9-1 (4) was first judicially construed as limiting compensation to only those claimants who suffered a physical injury, the General Assembly has amended the Act in many particulars. However, the General Assembly has never amended OCGA

§ 34-9-1 (4) so as to provide that a psychic injury, without a preceding or accompanying physical injury, is compensable. Where a statute has, by a long series of decisions, received a judicial construction in which the General Assembly has acquiesced and thereby given its implicit legislative approval, the courts should not disturb that settled construction. *Harrison v. McHenry*, 9 Ga. 164, 171 (3) (1850). See also *Smith v. Employers' Fire Ins. Co.*, 255 Ga. 596, 597 (340 SE2d 606) (1986); *Mitchell v. State*, supra.

"[E]ven those who regard 'stare decisis' with something less than enthusiasm recognize that the principle has even greater weight where the precedent relates to interpretation of a statute." *Walker v. Walker*, supra at 546 (2). A reinterpretation of a statute after the General Assembly's implicit acceptance of the original interpretation would constitute a judicial usurpation of the legislative function. There are public policy arguments which support a limited construction for the definition of a compensable "injury" contained in OCGA § 34-9-1 (4). *Hanson Buick, Inc. v. Chatham*, 163 Ga. App. 127, 129-130 (292 SE2d 428) (1982). It appears that the General Assembly has found those public policy arguments to be persuasive, because it has not amended the statute so as to provide otherwise. Any public policy arguments which support abandoning the long-standing construction in favor of a broader statutory definition should be addressed to the General Assembly. Compare *OB-GYN Assoc. of Albany v. Littleton*, supra (common law, rather than statutory law). A change in an "integral" part of the limited definition of OCGA § 34-9-1 (4) cannot be based upon a "reinterpretation" of that statutory provision accomplished through the failure to adhere to this Court's previous decision in *Southwire Co. v. George* and the long line of cases cited with approval therein. "Any enlargement of benefits and remedies must originate with the legislature." *Doss v. Food Lion, Inc.*, 267 Ga. 312, 313 (2) (477 SE2d 577) (1996).

It is undeniable that the result mandated by the application of the settled law to the facts of this case appears to be a harsh one. The evidence certainly authorizes, if not demands, a finding that, in the course of his employment with the City, Abernathy endured gruesome physical contact with cadavers and that, as the result thereof, he suffered a psychic trauma. If the Act did authorize a recovery for a purely psychological injury, the circumstances of this case clearly would entitle Abernathy to recover benefits from the City. However, an appellate court must be just before it is generous. *P & J Truck Lines v. Canal Ins. Co.*, 148 Ga. App. 3, 4 (251 SE2d 72) (1978). See also *Mercantile Nat. Bank v. Aldridge*, 233 Ga. 318, 320 (2) (210 SE2d 791) (1974). A "just" resolution of this case cannot be based simply upon the undisputed fact that Abernathy suffered a revolting employment related experience which caused an ensuing psychologi-

cal injury. The issue presented for determination is whether the Act, as properly construed, precludes, as a matter of law, the recovery of workers' compensation benefits for the purely psychological injury Abernathy sustained notwithstanding the undeniably horrible situation with which he was faced as an employee of the City. The terrible nature of the factual premise of Abernathy's claim must remain separate from the controlling legal issue of the statutory construction of a compensable "injury" as defined under OCGA § 34-9-1 (4).

Over the period that OCGA § 34-9-1 (4) has continued to receive a narrow judicial construction such that only a physical "injury" is compensable, the General Assembly has expressed its intent that the Act be construed liberally "for the purpose of bringing employers and employees within [its] provisions . . . and to provide protection for both." OCGA § 34-9-23. Applying that liberal construction here, the City is an employer and Abernathy is an employee "within" the provisions of the Act, and the only question is whether that Act provides coverage of Abernathy's claim for a purely psychological injury. In that particular regard, it is undisputed that the General Assembly has never expressed its intent that, contrary to the narrow judicial interpretation previously given to the statutory definition of a compensable "injury," OCGA § 34-9-1 (4) should now be construed broadly so as to allow a recovery of workers' compensation benefits by an employee who suffers a purely psychological injury. Pursuant to the applicable principles of statutory interpretation set forth in *Mitchell v. State*, supra at 6 (2), this legislative failure to disapprove the long-standing narrow judicial construction of OCGA § 34-9-1 (4) evidences the General Assembly's implicit determination to continue the same scope of coverage under the Act as presently exists pursuant to that narrow construction. *Hanson Buick, Inc. v. Chatham*, supra at 129-130. Since matters of statutory construction must be controlled by a judicial determination of the legislative intent, rather than by reliance upon the macabre facts of a particular case, any broadening of the definition of a compensable "injury" under OCGA § 34-9-1 (4) must necessarily be based upon an enactment of the General Assembly. Until the General Assembly passes such an act, the employee and employer in a statutory workers' compensation proceeding have the same, but no greater, "protection" with regard to the determination of the compensability of an "injury" as do the plaintiff and defendant in a common law negligence action.

*Judgment affirmed. All the Justices concur, except Benham, C. J., Sears and Hunstein, JJ., who dissent.*

HUNSTEIN, Justice, dissenting.

I respectfully dissent to the majority's holding that claimant Joel Abernathy did not sustain an injury compensable under the Georgia

Workers' Compensation Act.

The administrative law judge in this case made the following findings of fact: Abernathy has been a park maintenance supervisor for the City of Albany since the mid 1980's. His job primarily involves the planting and maintenance of grass, shrubbery, and trees for properties including the Flint River Cemetery. In early July 1994, torrential rain caused the Flint River to flood and flood waters lifted several hundred caskets from the cemetery ground, tore some of the caskets asunder, and carried caskets and corpses away from the cemetery. Because of vacationing superiors, Abernathy found himself in co-command of his department during the flood. Abernathy responded to this crisis situation by taking his personal boat to the cemetery and, over a five-day period, going after the floating caskets and tying them to trees and other objects to prevent them from floating down the flooded river. The ALJ found that Abernathy toiled twenty-two hours without a rest the first day, nearly that many hours on each of the following two days, and fourteen to sixteen hours the fourth and fifth days. He and three other employees were able to recover some 400 caskets and 18 corpses, 12 of which Abernathy personally retrieved. The bodies had to be manually lifted into the boats and some of the corpses came apart during the recovery efforts so that Abernathy had to retrieve them in pieces. The ALJ found that in one instance the head of a corpse broke away and landed in Abernathy's lap and in another instance, Abernathy's hands sank into the decayed flesh of one of the bodies he recovered.

It is uncontroverted that Abernathy sustained no *physical* injury as a result of this gruesome work activity. Abernathy continued to work after the flood subsided but the ALJ found that in January 1995, shortly after the City required him to present a detailed written account of what he had done during the flood, Abernathy began to experience "vivid recurring nightmares of a dead and decayed body emerging from the water to attack him." These nightmares continued and in March 1995, Abernathy suffered an episode in which he believed he was shooting at a corpse rising in the river only to discover, the following morning, that he had actually seized a pistol kept under his bed and shot his chest of drawers. Shortly thereafter, Abernathy sought and received counseling from the City's Employee Assistance Program[1] but in August 1995 the City's counselor referred Abernathy to a psychiatrist for further assistance. The psychiatrist diagnosed Abernathy as suffering from post-traumatic stress disorder and placed Abernathy on several prescription medications to

---

[1] The ALJ found that this program was established by the City to provide counseling for those employees who might have suffered emotional trauma as a result of the unusual experiences they had while working during the flood.

treat his symptoms. Although Abernathy had been working since the flood, he was not able to operate the machinery involved in his job while using the prescribed medications and he ceased working on August 8, 1995. It was at that point that Abernathy requested workers' compensation benefits to cover his medical treatment and loss of income; the City denied the claim.[2] Abernathy continued with his treatment and as a result thereof, he obtained relief from his symptoms and was able to return to work on January 25, 1996.

The evidence in this case reveals that a conscientious City of Albany employee, when faced with an emergency situation, responded to the crisis by performing duties that were almost inconceivably horrifying and macabre. Although he fortunately received no physical injury, he did not go unscathed: As a direct and uncontroverted result of his work activity during the flood, Abernathy sustained a psychological injury. Because of this work-related injury he sought workers' compensation benefits for his medical treatment and for income lost in the six months he was unable to work due to the side effects of physician-prescribed medication for his injury.

Abernathy sustained an injury which arose out of and in the course of his employment. OCGA § 34-9-1 (4). The fact that he has no physical damage on which to hang his compensation claim, no strained back or stress-related heart problems or even an injured knee, like the truck driver in *Southwire Co. v. George*, 266 Ga. 739 (470 SE2d 865) (1996), does not mean that this employee did not suffer an injury by accident arising out of and in the course of his employment. The legal reasons given by the majority to support its holding that mental injuries alone must be excluded from those injuries compensable under the Workers' Compensation Act have already been thoroughly and eloquently rebutted by Justice Sears in her special concurrence in *Southwire Co.*, supra at 743. As to the majority's stare decisis argument, the horrific facts of the case reveal the clear error committed by the appellate courts of this State in restricting the statutory language of OCGA § 34-9-1 (4) to those injuries linked with physical damage. It is said that "bad facts make bad law," but in this instance, bad facts have served only to uncover bad appellate case law already on the books. Rather than perpetuate this error, as the majority does, this Court should seize this opportunity to correct the error. Finally, while the majority stresses that its continued misinterpretation of the Act is supported by the Legislature's failure to correct the judicial branch's error, the General Assembly's intent in regard to the purpose of the Act has been the subject of recent legis-

---

[2] The ALJ noted that Abernathy used his accumulated sick and annual leave and the City filed claims for the medical expenses under its group health insurance.

lative action in the form of OCGA § 34-9-23, which holds that the Act must be "liberally construed" when its construction involves "bringing employers and employees within the provisions of [the Act] and to provide protection to both." The majority has rendered an opinion contrary to the plain language of this statutory mandate by holding that the Act provides no protection to Abernathy, an employee who has sustained an injury arising out of and in the course of his employment.

This Court cannot justly claim that we interpret OCGA § 34-9-1 (4) in a manner which is "sound and consistent with the beneficent objective of the Act," *Southwire Co.*, supra at 741, when we bar this employee's recovery for an injury that has directly arisen out of and in the course of his employment on the unenlightened and medically-insupportable basis that there can be no "injury" unless there is precedent or concurrent physical damage. Because I would interpret "injury" consistent with OCGA § 34-9-23 as providing protection to employees like Abernathy, who sustained an injury — a mental injury — as a result of his employment, I must respectfully dissent.

I am authorized to state that Chief Justice Benham and Justice Sears join in this dissent.

DECIDED JANUARY 26, 1998 —
RECONSIDERATION DENIED FEBRUARY 23, 1998.

*Eugene C. Black, Jr.*, for appellant.

*Gardner, Willis, Sweat & Goldsmith, Todd S. Handelman, Lewis R. Lamb, Hamilton, Westby, Marshall & Antonowich, Andrew J. Hamilton, Ralph J. Hiers, Drew, Eckl & Farnham, Daniel C. Kniffen,* for appellee.

*Swift, Currie, McGhee & Hiers, Robert R. Potter, Kenneth B. Still, George, Bartles & Wallach, Alex B. Wallach,* amici curiae.