962 F.2d 1579
 Patricia A. CAMPBELL, individually and as mother and natural
guardian of Jennifer L. Campbell, a minor; Thomas Campbell,
individually and as father and natural guardian of Jennifer
L. Campbell, a minor and Jennifer L. Campbell, by her
natural guardians and next friends, Patricia A. Campbell and
Thomas Campbell, Plaintiffs-Appellants,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 91-8744.
 United States Court of Appeals, Eleventh Circuit.
 June 15, 1992.
 
 Taylor W. Jones, Myles E. Eastwood, Atlanta, Ga., Reid G. Kennedy, Marietta, Ga., for plaintiffs-appellants.
 Nina L. Hunt, Asst. U.S. Atty., Russell G. Vineyard, Atlanta, Ga., for defendant-appellee.
 Appeal from the United States District Court for the Northern District of Georgia.
 Before ANDERSON, Circuit Judge, HILL, Senior Circuit Judge, and YOUNG*, Senior District Judge.
 HILL, Senior Circuit Judge:
 
 
 1
 Thomas and Patricia Campbell appeal from the district court's dismissal of their claim under the Federal Tort Claims Act (FTCA). The Campbells had brought a claim for wrongful birth, alleging that but for the failure of the doctor to diagnose her pregnancy and to administer an amniocentesis exam, the plaintiffs would have terminated the pregnancy, thus averting the birth of a severely mentally retarded and physically impaired child. Since plaintiffs may bring suits against the United States only if the laws of the state in which the injury occurs provides a claim or cause of action for such an incident and since Georgia does not recognize a cause of action for wrongful birth, the district court dismissed the claim. The Campbells argued that this nonrecognition of the wrongful birth cause of action violates their substantive due process and equal protection rights under the Fourteenth Amendment. The district court rejected these constitutional challenges, finding merely that plaintiffs had failed to state a claim under Georgia law. Plaintiffs appeal from this ruling.
 
 
 2
 Since this appeal is from a dismissal for failure to state a claim, we must accept the plaintiffs' allegations as true. Miller v. Stanmore, 636 F.2d 986 (5th Cir.1981). The district court's dismissal of a complaint is subject to de novo review. McDonald v. Hillsborough County School Board, 821 F.2d 1563, 1564 (11th Cir.1987). As the wife of Thomas Campbell, who was retired from the United States Air Force, Patricia Campbell obtained regular health care from the United States Army Health Clinic at Fort McPherson, Georgia. The clinic employed Dr. Yashasvini Desai in a civil service capacity. From December, 1984, until April, 1985, Mrs. Campbell went to the clinic and complained to Desai of symptoms that would indicate that she might be pregnant. Mrs. Campbell complained of diminished menses, tender breasts, and pain in her lower abdomen. She also indicated to Desai that she was afraid she might be pregnant. Desai told Mrs. Campbell that she was going through menopause. Plaintiffs allege that Desai deviated from the standard of care by failing to give Mrs. Campbell a conclusive pregnancy test on any of these occasions.
 
 
 3
 Finally, on April 15, 1985, Mrs. Campbell was given a pregnancy test that turned out positive. The Campbells allege that had the doctor not been negligent and instead had timely diagnosed pregnancy at either the December 1984 (first trimester) or March 1985 (second trimester) visit by Mrs. Campbell to the Fort McPherson Army Health clinic, then under the standard of care applicable to physicians similarly situated, Mrs. Campbell would have been provided genetic counseling and the opportunity for an amniocentesis exam. This exam would have detected the 10Q chromosome deletion that caused the child to be severely impaired. Since Desai had failed to diagnose her pregnancy in a timely manner, he negligently deprived the Campbells of an opportunity for this amniocentesis exam. The plaintiffs allege that if they had learned of the genetic defect before the end of the second trimester, they would have terminated the pregnancy.
 
 
 4
 The child, Jennifer, will have the maximum mental development of an eight-year old. In addition to her mental impairment, Jennifer requires constant medical care. Mrs. Campbell must feed Jennifer through a syringe and tube inserted in a stoma on her abdomen. At night, Jennifer is fed through a long tube inserted in the stoma. The child has also had corrective surgery for a clubbed foot, crossed eyes, and her esophageal sphincter. The Campbells seek to recover for the extraordinary expenditures they will need to make during the child's lifetime.[1]
 
 
 5
 Under the Gonzalez Amendment, 10 U.S.C. § 1089(a), medical malpractice claims are precluded against physicians employed by the Department of Defense. Thus, if the Campbells are to recover at all, they must recover against the United States, as the doctor's employer, under the FTCA. "The United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." United States v. Sherwood, 312 U.S. 584, 586, 61 S.Ct. 767, 769-70, 85 L.Ed. 1058 (1941). The federal government's waiver of sovereign immunity under the FTCA extends only to those torts committed by government employees "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b), 2674. Thus, "an action under FTCA exists only if the State in which the alleged misconduct occurred would permit a cause of action for that misconduct to go forward." Carlson v. green, 446 U.S. 14, 23, 100 S.Ct. 1468, 1474, 64 L.Ed.2d 15 (1980).
 
 
 6
 The district court dismissed the plaintiffs' claim under the FTCA because Georgia does not recognize a cause of action for wrongful birth. Atlanta Obstetrics & Gynecology Group v. Abelson, 260 Ga. 711, 398 S.E.2d 557 (1990). Since a private person in Georgia would not be liable, then the United States is not liable. Carlson, 446 U.S. at 23, 100 S.Ct. at 1474.
 
 
 7
 The plaintiffs argue that the decision by the Georgia Supreme Court that Georgia law does not provide recovery for wrongful birth violates their Fourteenth Amendment rights to due process and equal protection. The threshold question, then, is how has the doctor violated their rights? The plaintiffs are bringing a tort action for the doctor's failure to provide care to Campbell. The plaintiffs are not bringing a § 1983 claim for deprivation of a constitutional right.
 
 
 8
 The appellants argue that their tort claim obtains constitutional dimensions, because if they are not permitted to recover, their Fourteenth Amendment rights will be violated. A woman has a protected liberty interest in deciding whether to terminate a pregnancy. Harris v. McRae, 448 U.S. 297, 312, 100 S.Ct. 2671, 2685-86, 65 L.Ed.2d 784, reh'g denied, 448 U.S. 917, 101 S.Ct. 39, 65 L.Ed.2d 1180 (1980). In making her decision, the woman has the right to be free of affirmative governmental interference. Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). The appellants contend that the doctor's negligence interfered with Patricia Campbell's right to make a choice whether to continue her pregnancy. The state of Georgia is involved, the appellants claim, because Georgia's nonrecognition of the cause of action of wrongful birth will encourage doctors to fail to give women all the information they need in exercising their constitutionally protected choice.[2] The question, then, is whether Georgia's nonrecognition of a cause of action is state action that has brought the doctor's conduct within the purview of the Fourteenth Amendment, requiring the doctor's employer to pay money damages for some type of constitutional violation.[3]
 
 
 9
 The Fourteenth Amendment acts as a shield against only the government. Shelley v. Kraemer, 334 U.S. 1, 13, 68 S.Ct. 836, 842, 92 L.Ed. 1161 (1948). The constitution does not affect the relations between private parties, "however discriminatory or wrongful." Id. However, private conduct may be treated as state action for purposes of the Fourteenth Amendment if the conduct has received the imprimatur of the state. Blum v. Yaretsky, 457 U.S. 991, 1003, 102 S.Ct. 2777, 2785, 73 L.Ed.2d 534 (1982). The United States Supreme Court wrote,
 
 
 10
 Our precedents indicate that a State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt of covert, that the choice must in law be deemed to be that of the state.... Mere approval of or acquiescence in the initiatives of a private party is not sufficient to justify holding the State responsible for those initiatives under the Fourteenth Amendment.
 
 
 11
 Blum, 457 U.S. at 1004-1005, 102 S.Ct. at 2786. See also Carlin Communication, Inc. v. Southern Bell, 802 F.2d 1352, 1357 (11th Cir.1986). In Jackson v. Metropolitan Edison Co., 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974), the electric company was required to file a tariff with the Public Utility Commission ("PUC") which would become effective after sixty day unless the PUC rejected it. In its tariff, Edison included a provision which permitted it to terminate a customer's service for nonpayment. 419 U.S. at 354, 95 S.Ct. at 455. The Court held that the PUC's approval of the tariff did not transmute the practice into state action. 419 U.S. at 357, 95 S.Ct. at 456-457.
 
 
 12
 In this circuit, as well, we have held that the mere approval of a utility company's tariff is not sufficient to transform the utility into a public actor. Carlin, 802 F.2d at 1357. Southern Bell had made a corporate decision to exclude messages with sexual innuendos from its Dial-It tariff. The PUC's approval merely indicated that this decision was an appropriate one for a private corporation to make. This acquiescence did not constitute state action in Southern Bell's interference with appellant's First Amendment rights. Id.
 
 
 13
 Even when state laws permit private conduct which allegedly deprives claimants of constitutional rights, these laws do not transform private conduct into state action. While state law does sometimes provide remedies for private wrongs,
 
 
 14
 it would intolerably broaden, beyond the scope of any of our previous cases, the notion of state action under the Fourteenth Amendment to hold that the mere existence of a body of property law in a state, whether decisional or statutory, itself amounted to "state action," even though no process or state officials were ever involved in enforcing that body of law.
 
 
 15
 Flagg Brothers, Inc. v. Brooks, 436 U.S. 149, 160 n. 10, 98 S.Ct. 1729, 1735-36, 56 L.Ed.2d 185 (1978). In Flagg, the appellant had brought a § 1983 action against a warehouseman, claiming that the proposed sale of the appellant's goods pursuant to a New York statute deprived the appellant of her property without due process of law. The Supreme Court held that a state's merely having laws regulating the private property rights did not delegate to Flagg Brothers the attributes of a sovereign. Id.
 
 
 16
 In addition, the appellant in Flagg argued that the warehouseman's sale should be attributed to New York because New York had authorized and encouraged it by enacting the statute permitting such a sale. 436 U.S. at 164, 98 S.Ct. at 1337. The Supreme Court rejected that argument, noting it had
 
 
 17
 never held that a State's mere acquiescence in a private action converts that action into that of the State.... It is quite immaterial that the State has embodied its decision not to act in statutory form. If New York had no commercial statutes at all, its courts would still be faced with the decision whether to prohibit or to permit the sort of sale threatened here the first time an aggrieved bailor came before them for relief. A judicial decision to deny relief would be no less an "authorization" or "encouragement" of that sale than the legislature's decision embodied in this statute.... If the mere denial of judicial relief is considered sufficient encouragement to make the State responsible for those private acts, all private deprivations of property would be converted into public acts whenever the State, for whatever reason, denies relief sought by the putative property owner.
 
 
 18
 Id. at 164-165, 98 S.Ct. at 1337-38.
 
 
 19
 In the instant case, while Georgia has a statute which permits injured parties to recover for medical malpractice committed by private parties, this statute does not permit recovery for the tort called wrongful birth. While the practical effect of nonrecognition of wrongful birth could very well be that doctors may be less careful in their care for women, this nonrecognition does not coerce or compel private parties to violate women's rights. If the New York statute that permitted a private party allegedly to violate the constitutional rights of another was not state action, then surely a Georgia statute that does not provide recovery for private conduct is not state action.
 
 
 20
 Georgia has not commanded doctors to interfere with a woman's constitutional rights. Georgia's reluctance to interject itself into the private relations of its citizens cannot be construed as affirming or encouraging private conduct for purposes of the Fourteenth Amendment. To find state action whenever a state has not acted would broaden state action to encompass practically all private conduct. In effect, plaintiffs' contentions would lead us to a point where all conduct not forbidden by the state could be attributed to the state. Such an interpretation cuts against a basic tenet of our constitutional law: the Fourteenth Amendment regulates the relationship between the state and its citizens, not the private relations between citizens. Shelley, 334 U.S. at 13, 68 S.Ct. at 842.
 
 
 21
 Discerning why a state has not acted can be an impossible task; however, the Georgia Supreme Court has given its reasons for not recognizing the wrongful birth cause of action. Abelson, 398 S.E.2d at 561. There is no indication that the Georgia Supreme Court or legislature has disallowed a recovery for wrongful birth because of antipathy to abortion. It is permissible for a court to consider a woman's right to privacy in making decisions about her pregnancy as a public policy favoring the creation of a wrongful birth cause of action. Blake v. Cruz, 108 Idaho 253, 257, 698 P.2d 315, 319 (1984). On the other hand, since Roe v. Wade, it may be impermissible for a court to consider public policy against abortion when deciding whether to permit the claim. Id. at 256, 698 P.2d at 318. Without discussing these policies, the Georgia Supreme Court found that a wrongful birth action was not permitted by O.C.G.A. § 51-1-27 because of difficulty in assessing the damages and causation prongs of a traditional tort analysis. Abelson, 398 S.E.2d at 561.
 
 
 22
 Although nineteen other states have apparently had no difficulty in ascertaining the damages and causation caused by a doctor's failure to diagnose,[4] we are not called upon to opine on the Georgia Supreme Court's wisdom. Even if it could somehow be determined that the Georgia Supreme Court chose to disallow a cause of action for wrongful birth because it would promote abortion, this failure of Georgia to remedy the wrong committed by a private party does not make that party's act an unconstitutional state act.
 
 
 23
 As the Michigan Court of Appeals noted when confronted with whether Michigan recognizes wrongful birth, "the issue of whether abortion should be allowed and all the related moral, religious, and policy arguments are not before us." Proffitt v. Bartolo, 162 Mich.App. 35, 412 N.W.2d 232, 235 (1987). Or, as the Minnesota Supreme Court put it, "The issue is whether the state has a right to decide what action or inaction on the part of one person is actionable by another in the courts of this state." Hickman v. Group Health Plan, Inc., 396 N.W.2d 10, 14 (Minn.1986). The state's decision not to recognize a cause of action for private conduct does not transform that conduct into state action. This is a classic tort action between a private plaintiff and the United States acting as a private employer. Since the plaintiffs have failed to allege a cause of action under Georgia law, the district court's judgment of dismissal is
 
 
 24
 AFFIRMED.
 
 ANDERSON, Circuit Judge, concurring specially:
 
 25
 I agree with the majority that we should affirm the district court's judgment of dismissal because appellants' negligence claim is not cognizable under Georgia medical malpractice law and, therefore, cannot form the basis for suit under the Federal Tort Claims Act (FTCA). I write separately because I reach this result on the basis of an analysis which is different from, and inconsistent with, that of the majority.
 
 
 26
 Respectfully, I submit that the majority misconstrues the issue before us. I agree that, under the facts of this appeal, Dr. Desai is not a state actor. However, the issue we must decide is the substance of the law which is to be applied. Because this is a FTCA case, it is clear that the district court properly looked to Georgia medical malpractice law. But it is also clear that, under the Supremacy Clause, Georgia law applies only to the extent that it is consistent with the United States Constitution. If the Georgia Supreme Court's opinion in Atlanta Obstetrics & Gynecology v. Abelson, 260 Ga. 711, 398 S.E.2d 557 (1990), articulated an unconstitutional rule of law, the district court could not properly apply it in construing Georgia's medical malpractice scheme. Therefore, we must consider appellants' constitutional challenge to determine whether the district court correctly implemented Georgia law in dismissing appellants' FTCA claim.[1]
 
 
 27
 In order to determine whether the Georgia law precluding wrongful birth actions is constitutional, we must first determine the appropriate standard of review. This is not a simple task. In Roe v. Wade, 410 U.S. 113, 155, 93 S.Ct. 705, 728, 35 L.Ed.2d 147 (1973), the Supreme Court held that abortion was a fundamental right and, therefore, applied strict scrutiny review to Texas' criminal prohibition of abortion. The Court continued to apply strict scrutiny to state laws restricting abortion through the mid-1980's. See Thornburgh v. American College of Obstetricians and Gynecologists, 476 U.S. 747, 759, 106 S.Ct. 2169, 2178, 90 L.Ed.2d 779 (1986); Akron v. Akron Center for Reproductive Health, Inc., 462 U.S. 416, 427, 103 S.Ct. 2481, 2491, 76 L.Ed.2d 687 (1983). However, in Webster v. Reproductive Health Services, 492 U.S. 490, 109 S.Ct. 3040, 106 L.Ed.2d 410 (1989), the Court clearly abandoned strict scrutiny analysis in upholding the constitutionality of a Missouri viability testing provision. Chief Justice Rehnquist's opinion, joined by Justices White and Kennedy, upheld the provision under rational basis review. Id. at 520, 109 S.Ct. at 3058. Justice Scalia's concurring opinion explicitly called for overruling Roe and the constitutional framework it established. Id. at 532, 109 S.Ct. at 3064. Finally, Justice O'Connor's concurring opinion upheld the statute because it did not "impose an undue burden on a woman's abortion decision." Id. at 530, 109 S.Ct. at 3063. This opinion reflects Justice O'Connor's view that "[i]f the particular regulation does not 'unduly burden' the fundamental right [to choose abortion], then our evaluation of that regulation is limited to our determination that the regulation rationally relates to a legitimate state purpose," rather than application of strict scrutiny. Akron, 462 U.S. at 453, 103 S.Ct. at 2504 (O'Connor, J., dissenting) (citation omitted).
 
 
 28
 In Marks v. United States, 430 U.S. 188, 193, 97 S.Ct. 990, 993, 51 L.Ed.2d 260 (1977), the Court provided guidance to lower courts interpreting decisions like Webster in which "a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices." The Court instructed that "the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." Id., 97 S.Ct. at 993 (quoting Gregg v. Georgia, 428 U.S. 153, 169 n. 15, 96 S.Ct. 2909, 2923 n. 15, 49 L.Ed.2d 859 (1976) (opinion of Stewart, Powell, and Stevens, JJ.)); see also S.J. Groves & Sons Co. v. Fulton County, 920 F.2d 752, 765 n. 18 (11th Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 2274, 114 L.Ed.2d 725 and --- U.S. ----, 111 S.Ct. 2893, 115 L.Ed.2d 1057 (1991) (applying Marks rule). In a recent opinion, the Third Circuit applied this principle to the Court's abortion jurisprudence and persuasively concluded that Justice O'Connor's opinion in Webster provided the narrowest grounds for deciding that case. Planned Parenthood v. Casey, 947 F.2d 682, 692-97 (3rd Cir.1991), cert. granted, --- U.S. ----, 112 S.Ct. 931-32, 117 L.Ed.2d 104 (1992). I agree. In Justice O'Connor's view, a court should apply strict scrutiny review only to regulations on abortion that impose an undue burden and rational basis review to those, as in Webster, which do not. Id. at 697. Therefore, we should apply strict scrutiny review to Georgia's decision not to recognize a cause of action for wrongful birth if it "significantly burdens a woman's abortion decision," Planned Parenthood Ass'n v. Miller, 934 F.2d 1462, 1469 n. 11 (11th Cir.1991), and rational basis review if the burden on a woman's decision is only minor.
 
 
 29
 After careful consideration, I conclude that Georgia's refusal to recognize a cause of action for wrongful birth does not place a significant burden on a woman's right to decide whether to terminate a pregnancy. Appellants argue that Georgia's law constitutes a heavy burden on this right because, by immunizing from liability doctors who fail to provide information necessary for making an abortion decision, the law encourages the negligent withholding of that information. It is well recognized that one of the functions of the tort law is to deter negligent acts, and, therefore, I agree that Georgia's law has some tendency to encourage carelessness on the part of doctors with respect to advising patients about abortion matters. However, because Georgia's nonrecognition of suits for wrongful birth neither actively interferes with a woman's abortion decision nor removes all deterrents to a doctor negligently failing to give information necessary to making an informed choice, I cannot agree with appellants that Georgia's law constitutes an undue burden warranting strict scrutiny.
 
 
 30
 In reaching this conclusion, I rely on recent Supreme Court cases where the Court has declined to subject to strict scrutiny far greater burdens on a woman's right to choose to terminate her pregnancy. In Webster, for example, the Court approved a Missouri law requiring a doctor to conduct certain tests to determine a fetus' viability prior to performing an abortion, except in "situations where it would be careless and imprudent to do so." 109 S.Ct. at 3060 (O'Connor, J., concurring). Under this law, a doctor who fails to perform viability tests has a legal obligation to prove that the tests were imprudent, rather than merely show that the doctor exercised "that degree of care, skill, and proficiency which is commonly exercised by the ordinarily skillful, careful, and prudent physician, engaged in a similar practice under the same or similar conditions." Yoos v. Jewish Hosp. of St. Louis, 645 S.W.2d 177, 183 (Mo.App.1982) (quoting Rauschelbach v. Benincasa, 372 S.W.2d 120, 124 (Mo.1963) (standard of care imposed on doctor in medical malpractice case). It seems clear, then, that, in many cases, Missouri's law would require doctors to perform tests which they would not otherwise perform in the exercise of professional judgment. Nonetheless, as discussed above, five Justices upheld Missouri's law under a rational basis standard. See also Rust v. Sullivan, --- U.S. ----, 111 S.Ct. 1759, 1776-78, 114 L.Ed.2d 233 (1991) (no undue burden on abortion right where federal regulations prohibited projects receiving Title X funds from (1) counseling concerning, (2) referring for, or (3) advocating abortion as a method of family planning).
 
 
 31
 Georgia's law, on the other hand, does not similarly require a doctor to deviate from ordinary practice in advising pregnant women. At most, appellants raise a speculative fear that removing the threat of medical malpractice liability will, in some cases, result in women receiving less information with respect to their abortion decisions. The indirect burden Georgia's law places on the abortion right certainly is no greater than the one the Court found merited only rational basis review in Webster.
 
 
 32
 The existence of other deterrents to a doctor negligently failing to give information related to a woman's abortion decision further persuades me that Georgia's law does not unduly burden the abortion right. Even in the absence of the threat of liability for medical malpractice, doctors still have an ethical and professional duty to give full information and advice regarding matters crucial to an informed medical decision. Furthermore, appellants conceded at oral argument that a doctor who negligently failed to provide this information to a pregnant woman still runs the risk of having Georgia's Board of Medical Examiners determine that the doctor's deficient performance merits suspension or revocation of the doctor's medical license. See O.C.G.A. § 43-34-37.
 
 
 33
 Georgia's medical malpractice law easily satisfies the rational basis standard applicable to minor burdens on the right to choose abortion. In Abelson, 398 S.E.2d at 563, the Georgia Supreme Court explained its refusal to recognize a cause of action for wrongful birth absent a clear mandate by the legislature, observing that " 'wrongful birth' does not fit within the parameters of traditional tort law." Appellants have failed to advance any argument why this court should find that the Georgia Supreme Court's decision to leave to the legislature resolution of a difficult policy question is not rational. Therefore, I conclude that Georgia's law passes constitutional muster, and that the district court properly applied Abelson to bar appellants' FTCA claim.
 
 
 
 *
 Honorable George C. Young, Senior U.S. District Judge for the Middle District of Florida, sitting by designation
 
 
 [1]
 These mental and physical problems are set out as described in the complaint. They tend to support the plaintiffs' assertion that Patricia Campbell would have chosen abortion had the 10Q deletion been detected. We note, however, that under the appellants' contentions, a cause of action would lie for the birth of even a healthy child; the constitution protects the right of a woman to choose an abortion whether or not the child is defective. See Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). If the denial of a malpractice cause of action in circumstances such as this violated the constitution, the constitution would be violated whether or not the fetus were defective
 
 
 [2]
 Plaintiffs also claim that Georgia violates their equal protection rights. Georgia recognizes a cause of action for "wrongful pregnancy." This cause of action permits a woman to sue when a doctor negligently fails to sterilize her, resulting in the birth of a child. Plaintiffs argue that Georgia violates equal protection by permitting a cause of action for a negligent act that results in the birth of a child, but refusing to recognize one that results in abortion. Plaintiffs also claim that this discriminates on the basis of gender. Georgia permits recovery for all other types of medical malpractice, except the wrongful birth species on which only women could sue, while men can recover for medical malpractice that injures them. As with their substantive due process claims, these equal protection claims turn on whether there has been state action
 
 
 [3]
 The appellants frame the issue as whether this court should apply an unconstitutional Georgia law. However, there is simply no Georgia law to apply since Georgia does not recognize wrongful birth. Georgia never had a wrongful birth cause of action at common law. After the Georgia legislature enacted O.C.G.A. § 51-1-27 which permits medical malpractice actions, the Georgia Supreme Court determined that the legislature did not intend to create wrongful birth actions. Abelson, 398 S.E.2d at 560. We construe appellants' argument as asking us to decide that Georgia's nonrecognition of wrongful birth violates the due process and equal protection rights of the plaintiffs and compels the creation of a wrongful birth cause of action
 
 
 [4]
 Turpin v. Sortini, 31 Cal.3d 220, 182 Cal.Rptr. 337, 643 P.2d 954 (1982); Lininger v. Eisenbaum, 764 P.2d 1202 (Colo.1988); Haymon v. Wilkerson, 535 A.2d 880 (D.C.App.1987); Fassoulas v. Ramey, 450 So.2d 822 (Fla.1984); Blake v. Cruz, 108 Idaho 253, 698 P.2d 315 (1984); Siemieniec v. Lutheran General Hosp., 134 Ill.App.3d 823, 89 Ill.Dec. 484, 480 N.E.2d 1227 (1985), aff'd in part and rev'd in part, 117 Ill.2d 230, 111 Ill.Dec. 302, 512 N.E.2d 691 (1987); Arche v. United States, 247 Kan. 276, 798 P.2d 477 (1990); Proffitt v. Bartolo, 162 Mich.App. 35, 412 N.W.2d 232 (1987); Smith v. Cote, 128 N.H. 231, 513 A.2d 341 (1986); Schroeder v. Perkel, 87 N.J. 53, 432 A.2d 834 (1981); Alquijay v. St. Luke's- Roosevelt Hosp. Ctr., 63 N.Y.2d 978, 483 N.Y.S.2d 994, 473 N.E.2d 244 (1984); Becker v. Schwartz, 46 N.Y.2d 401, 413 N.Y.S.2d 895, 386 N.E.2d 807 (1978); Bowman v. Davis, 48 Ohio St.2d 41, 356 N.E.2d 496 (1976); Speck v. Finegold, 497 Pa. 77, 439 A.2d 110 (1981); Phillips v. United States, 575 F.Supp. 1309, 1315-17 (D.S.C.1983); Jacobs v. Theimer, 519 S.W.2d 846 (Tex.1975); Naccash v. Burger, 223 Va. 406, 290 S.E.2d 825 (1982); Harbeson v. Parke-Davis, Inc., 98 Wash.2d 460, 656 P.2d 483 (1983); James G. v. Caserta, 175 W.Va. 406, 332 S.E.2d 872 (1985); Dumer v. St. Michael's Hosp., 69 Wis.2d 766, 233 N.W.2d 372 (1975)
 
 
 [1]
 Appellants' arguments that Georgia's medical malpractice law violates equal protection are without merit and do not require discussion