S98G1978. ETKIND et al. v. SUAREZ et al.
(519 SE2d 210)

CARLEY, Justice.

Throughout her pregnancy, Dr. Jennifer Etkind was a patient of Dr. Ramon Suarez. After giving birth to a child with Down's Syndrome, she and her husband filed suit against Dr. Suarez and his partnership, asserting a "wrongful birth" claim. Such a claim "is brought by the parents of an impaired child and alleges basically that, but for the treatment or advice provided by the defendant, the parents would have aborted the fetus, thereby preventing the birth of the child." *Atlanta Obstetrics & Gynecology Group v. Abelson*, 260 Ga. 711, 713 (398 SE2d 557) (1990), rev'g 195 Ga. App. 274 (392 SE2d 916) (1990). The trial court granted the defendants' motion for judgment on the pleadings. The Court of Appeals affirmed, concluding that *Atlanta Obstetrics & Gynecology Group v. Abelson*, supra, remains controlling precedent for the proposition that, unless and until it is authorized by the General Assembly, a cause of action for wrongful birth will not be recognized in Georgia. *Etkind v. Suarez*, 234 Ga. App. 108 (505 SE2d 831) (1998). We granted certiorari to review this holding of the Court of Appeals. In accordance with the fundamental principles of separation of powers and stare decisis, we are compelled to adhere to *Abelson* and, therefore, to affirm the Court of Appeals.

1. Although a plurality of the Court of Appeals recognized the viability of a wrongful birth claim in *Abelson*, this Court granted certiorari and held "that 'wrongful birth' actions shall not be recognized in Georgia absent a clear mandate for such recognition by the legislature." *Abelson*, supra at 714. Thus, *Abelson* established that the then-existing medical malpractice statute did not authorize a wrongful

birth cause of action, and that additional legislation was necessary because

> this is an area more properly suited to legislative action as the legislature offers a forum wherein all of the issues, policy considerations and long range consequences involved in recognition of the novel concept of a "wrongful birth" cause of action can be thoroughly and openly debated and ultimately decided.

*Abelson*, supra at 718-719. Because the General Assembly has not enacted any legislation authorizing a recovery for the wrongful birth of a child, Dr. Etkind and her husband have no viable claim unless *Abelson* can be distinguished or is overruled.

Initially, the Etkinds contend that *Abelson* is factually distinguishable due to the medical advancements in the area of prenatal care which have occurred since that case was decided. However, *Abelson*, supra at 718, anticipated these developments and indicated that "with the continued advances in medical science which are occurring daily, the problems presented by the concept of 'wrongful birth' actions can only become increasingly more numerous and more complex." *Abelson*, supra at 718. Thus, the rapid pace at which medicine has indeed moved in the interim validates, rather than distinguishes, *Abelson*'s ultimate conclusion that a cause of action for wrongful birth can be created only through the legislative process.

More importantly, the doctrine of separation of powers is an immutable constitutional principle which must be strictly enforced. *McCutcheon v. Smith*, 199 Ga. 685, 691 (2) (35 SE2d 144) (1945). Under that doctrine, statutory " ' "construction belongs to the courts, legislation to the legislature. We can not add a line to the law, nor can the legislature enlarge or diminish a law by construction." ' " [Cits.]" *Modern Homes Constr. Co. v. Burke*, 219 Ga. 710, 715 (135 SE2d 383) (1964). According to *Abelson*, the judiciary cannot recognize a cause of action for wrongful birth, and the authority of the courts extends only to construction of the provisions of whatever statute the General Assembly may choose to enact in that regard. Despite ensuing medical advancements, no legislation amending the malpractice statute so as to permit a recovery for wrongful birth has been enacted. If, under the constitutional mandate of separation of powers, authorization of a wrongful birth claim was exclusively a legislative function when *Abelson* was decided, it does not now become a judicial function simply because the parameters of the medical knowledge relevant to assessing the defendant's liability for such a claim may have changed. To the contrary, the lack of a legislative response indicates that the General Assembly has not been per-

suaded by any reason, including subsequent medical advances, to exercise its constitutional power to amend the malpractice act so as to permit a recovery for wrongful birth claims. See *Abernathy v. City of Albany*, 269 Ga. 88, 90 (495 SE2d 13) (1998). Thus, *Abelson* cannot be distinguished factually as controlling authority for the invalidity of the Etkinds' claim.

2. In the alternative, Dr. and Mr. Etkind assert that *Abelson* is distinguishable on legal grounds, because it conflicts with the subsequent decision in *Planned Parenthood of Southeastern Penn. v. Casey*, 505 U. S. 833 (112 SC 2791, 120 LE2d 674) (1992). In *Casey*, supra at 846 (I), the Supreme Court of the United States reaffirmed "the right of the woman to choose to have an abortion before viability and to obtain it without undue interference from the State." Here, however, the Etkinds do not contend that the State of Georgia itself unduly interfered with Dr. Etkind's original abortion choice. Instead, the Etkinds challenge this Court's construction of the tort law of Georgia in *Abelson* as barring their subsequent recovery of damages from Dr. Suarez based upon his alleged interference with that choice.

Nothing in *Casey* holds that the Federal Constitution compels the states to recognize a woman's right to bring a civil suit against her obstetrician for the negligent failure to assist her in making an informed abortion decision. The narrow holding in *Abelson* is that, absent legislation, parents in Georgia cannot recover damages for the wrongful birth of their child. This holding does not violate the constitutional rights of the parents of an impaired child, because the refusal to recognize a wrongful birth claim absent authorizing legislation does not constitute undue interference by Georgia in the exercise of the right to elect to have an abortion.

> Georgia has not commanded doctors to interfere with a woman's constitutional rights. Georgia's reluctance to interject itself into the private relations of its citizens cannot be construed as affirming or encouraging private conduct for purposes of the Fourteenth Amendment. To find state action whenever a state has not acted would broaden state action to encompass practically all private conduct.

*Campbell v. United States*, 962 F2d 1579, 1583 (11th Cir. 1992). *Abelson* did not leave parents of impaired children with no possibility of obtaining a civil remedy, but held only that a cause of action for wrongful birth must be created by the legislative, rather than the judicial, branch of this state's government. Although Georgia itself cannot unduly interfere with a woman's constitutional right to obtain an abortion, this Court retains the exclusive power to determine whether parents of a child have a viable claim against an obstetri-

cian under the tort law of this state. This Court lawfully exercised that power in *Abelson*.

> Even if it could somehow be determined that the Georgia Supreme Court chose to disallow a cause of action for wrongful birth because it would promote abortion, this failure of Georgia to remedy the wrong committed by a private party does not make that party's act an unconstitutional state act.

*Campbell v. United States*, supra at 1584. *Casey* does not compel an interpretation of the law of Georgia different from that reached in *Abelson*.

3. The Etkinds urge that we should overrule *Abelson* because it violates the Equal Protection Clause of the Georgia Constitution, which they contend guarantees them the same right to sue that was afforded to parents by the decision in *Fulton-DeKalb Hosp. Auth. v. Graves*, 252 Ga. 441 (314 SE2d 653) (1984).

The Equal Protection Clause of both the Federal and Georgia Constitutions requires that similarly situated individuals be treated in a similar manner. *City of Atlanta v. Watson*, 267 Ga. 185, 187 (1) (475 SE2d 896) (1996). Thus, only those who are members of the same class as the parents in *Graves* can rely upon that case as authority for a constitutional entitlement to equal treatment. See *Lowe v. State of Ga.*, 267 Ga. 754 (1) (482 SE2d 344) (1997). The Etkinds are asserting a wrongful birth claim, whereas the parents in *Graves* were making a "wrongful pregnancy" claim. As both *Graves* and *Abelson* clearly recognized, there are significant differences between these two claims.

The plaintiffs in a wrongful pregnancy action never wanted to become parents, and their suit is based upon the alleged negligent performance of an actual sterilization or abortion procedure. "Such an action is no more than a species of malpractice which allows recovery from a tortfeasor in the presence of an injury caused by intentional or negligent conduct." *Graves*, supra at 443 (1). As a traditional tort, wrongful pregnancy will not authorize a recovery of the expenses of raising the child, but only a limited "recovery of expenses for the unsuccessful medical procedure which led to conception or pregnancy, for pain and suffering, medical complications, costs of delivery, lost wages, and loss of consortium. [Cit.]" *Graves*, supra at 443 (2). The Etkinds, on the other hand, wanted a child, but allege that they would have elected an abortion rather than become parents of an impaired child. Accordingly, their claim is not based upon the occurrence of Dr. Etkind's pregnancy, but upon its unwanted result. Because it involves placing a value on human life, the Etkinds' wrongful birth claim, unlike the wrongful pregnancy

claim considered in *Graves,*

> does not fit within the parameters of traditional tort law. The concept of such a cause of action is unique: It is a new and on-going condition. As life, it necessarily interacts with other lives. Indeed, it draws its "injurious" nature from the predilections of the other lives it touches. It is naive to suggest that such a situation falls neatly into conventional tort principles, producing neatly calculable damages. [Cit.]

*Abelson,* supra at 718. After articulating the differences between the causes of action, this Court ruled in *Abelson* that recognition of the parents' right to recover for the wrongful birth of an impaired child must come from the General Assembly. Because the Etkinds are not in the same class as the parents in *Graves,* they have no viable challenge to *Abelson* on equal protection grounds.

4. The Etkinds further cite the Due Process Clause of the Georgia Constitution as authority for holding that this Court erroneously decided *Abelson.* However, that clause only protects Georgia citizens against state action, and does not affect the conduct of other private individuals. *Reinertsen v. Porter,* 242 Ga. 624, 627 (1) (250 SE2d 475) (1978). As previously discussed, Dr. Etkind contends that she did not exercise her right to have an abortion only because of Dr. Suarez's alleged professional negligence. The involvement of the State of Georgia is limited to this Court's decision in *Abelson* as barring the Etkinds' civil recovery of monetary damages for that alleged malpractice. The Due Process Clause does not guarantee any citizen a favorable outcome when this Court exercises its jurisdiction and construes the tort law of this state. *Abelson* holds only that there is no viable common law cause of action for wrongful birth, and that the recognition of that claim requires an amendment to the malpractice statute. For purposes of due process, the Etkinds have no property interest in a cause of action, such as wrongful birth, which was not recognized by the common law. See *Robeson v. International Indem. Co.,* 248 Ga. 306, 308 (2) (282 SE2d 896) (1981). Therefore, the Due Process Clause does not require a contrary ruling to that reached in *Abelson.*

5. Although, for the reasons discussed in Division 2, the decision of the Supreme Court of the United States in *Casey* has no constitutional bearing in this case, it does have significance in its invocation of the principle of stare decisis as support for reaffirmance of the controversial recognition of a woman's right to an abortion.

> [W]e recognize that no judicial system could do society's work if it eyed each issue afresh in every case that raised it.

> [Cit.] Indeed, the very concept of the rule of law underlying our own Constitution requires such continuity over time that a respect for precedent is, by definition, indispensable. [Cit.]

*Casey*, supra at 854 (III) (A). As is true with regard to the existence of a constitutional right to an abortion, the validity of the reasoning of *Abelson* is not universally acknowledged. Indeed, the author of this opinion wrote for a plurality of the Court of Appeals in *Abelson* that

> a "wrongful birth" claim is within the parameters of traditional Georgia tort principles. "Such an action is no more than a species of malpractice which allows recovery from a tortfeasor in the presence of an injury caused by intentional or negligent conduct. [Cit.]"

*Atlanta Obstetrics & Gynecology Group v. Abelson*, 195 Ga. App., supra at 277 (1). However, the issue now presented for resolution is not the persuasiveness vel non of the underlying rationale of *Abelson*, but the continued viability of its holding that a wrongful birth claim is not cognizable absent legislative authorization. Stare decisis is compelling support for adherence to the holding in *Abelson*, despite the continuing objections to its rationale.

> The application of the doctrine of stare decisis is essential to the performance of a well-ordered system of jurisprudence. In most instances, it is of more practical utility to have the law settled and to let it remain so, than to open it up to new constructions, as the personnel of the court may change, even though grave doubt may arise as to the correctness of the interpretation originally given to it. [Cits.]

*Cobb v. State*, 187 Ga. 448, 452 (200 SE 796) (1939). *Abelson* has been followed consistently over the years. *Vance v. T.R.C.*, 229 Ga. App. 608, 614 (4) (494 SE2d 714) (1997) (cert. denied); *Gale v. Obstetrics & Gynecology of Atlanta, P.C.*, 213 Ga. App. 614 (1) (445 SE2d 366) (1994); *Spires v. Kim*, 203 Ga. App. 302 (416 SE2d 780) (1992) (cert. denied). Certainly, stare decisis should not be applied to the extent that an error in the law is perpetuated. *Humthlett v. Reeves*, 211 Ga. 210, 215 (1) (b) (85 SE2d 25) (1954). However, *Abelson* is not an erroneous statement of the law of Georgia, but merely a pronouncement by a majority of this Court as to the proper construction of the tort law of this state on a matter of first impression. As exemplified by the plurality opinion of the Court of Appeals in *Abelson* and by the dissents filed in *Abelson* in this Court, reasonable minds could and did differ on that issue. Nevertheless,

this Court's majority opinion in *Abelson* is controlling precedent for the proposition that our current malpractice statute does not encompass a wrongful birth claim.

> "[E]ven those who regard 'stare decisis' with something less than enthusiasm recognize that the principle has even greater weight where the precedent relates to interpretation of a statute." [Cit.] A reinterpretation of a statute after the General Assembly's implicit acceptance of the original interpretation would constitute a judicial usurpation of the legislative function.

*Abernathy v. City of Albany*, supra at 90. Because it constitutes controlling authority on the interpretation of the statutory law of this state, *Abelson* is "binding upon us and will be followed in the present case unless the law upon which [it is] based has been subsequently changed *by legislative action* so as to require a different ruling at the present time." (Emphasis supplied.) *Brinkley v. Dixie Constr. Co.*, 205 Ga. 415, 416 (54 SE2d 267) (1949). Notwithstanding the public policy arguments which support a broader application of our malpractice statute, it appears that the General Assembly has not found those arguments to be persuasive, since it has not amended that statute so as to provide for a wrongful birth cause of action. *Abernathy v. City of Albany*, supra at 90. "Our institutional duty is to follow until changed the law as it now is, not as some Members of the Court might wish it to be." *Hudgens v. NLRB*, 424 U. S. 507, 518 (II) (96 SC 1029, 47 LE2d 196) (1976). *Abelson* sets forth the existing law with regard to the Etkinds' wrongful birth claim and that case must control without regard to whether any current member of this Court did or would have voted differently when it was decided. Because we do not write on a clean slate, stare decisis compels that we follow and apply *Abelson* despite any disagreement we may have with its analysis.

> Stare decisis is a rule to insure uniformity. This tribunal, when it ceases to regard it, will greatly impair its value, and fail to secure public confidence. If this Court has been wrong from the beginning, on this subject, let the legislative power be invoked to prescribe a new rule for the future; until altered by that power, we are disposed to adhere to the rule which has been so long applied by our Courts and is so well known to the legal profession.

*Adams v. Brooks*, 35 Ga. 63, 66 (3) (1866). The Court of Appeals correctly affirmed the trial court's grant of the defendants' motion for judgment on the pleadings in accordance with *Abelson*.

*Judgment affirmed. All the Justices concur, except Benham, C. J.,*

*who dissents.*

FLETCHER, Presiding Justice, concurring.

In *Atlanta Obstetrics & Gynecology Group P.A. v. Abelson*, this Court held that a claim for "wrongful birth" did not fit within the traditional confines of tort law and, in view of the complex policy issues raised by such a claim, we deferred to the legislature rather than create a new cause of action.[1] The policy reasons for deferring to the legislature have become only stronger since we decided *Abelson*. The same year we decided *Abelson*, the United States Department of Energy and the National Institutes of Health launched the Human Genome Project to identify and map all the genes comprising the human DNA.[2] Through this and other research efforts, scientists will no doubt add to the more than 450 clinical tests for genetic disorders.[3] Increased availability of prenatal testing for a wide variety of diseases and conditions raises complex societal and ethical issues. I remain committed to the view I expressed in *Abelson* that the courts are ill-equipped to resolve these issues through the expansion of tort liability.

I am authorized to state that Justice Sears joins in this concurrence.

BENHAM, Chief Justice, dissenting.

In 1990, I was compelled to dissent to this Court's decision in *Atlanta Obstetrics & Gynecology Group v. Abelson*, 260 Ga. 711 (398 SE2d 557) (1990), because I believed the decision that the courts of this State would not recognize a cause of action for wrongful birth was wrong. Because I believe that the majority opinion in this case perpetuates that mistake, I am obliged to dissent again.

I believe now, as I asserted then, that "a cause of action [for wrongful birth] exists within the framework of our traditional law of torts." Id. at 723. In the interim since *Abelson*, I have not come to doubt that position, but I have modified my position on damages somewhat. In my dissent in *Abelson*, I stated my belief that "the extraordinary expenses of raising the child are recoverable," but I have since come to agree with the damages approach taken by the

---

[1] 260 Ga. 711 (398 SE2d 557) (1990).

[2] See Ari Patrinos & Daniel W. Drell, *Introducing the Human Genome Project: Its Relevance, Triumphs, and Challenges,* ABA JUDGE'S JOURNAL, summer 1997. Information about the human genome project, including portions of the *ABA Judge's Journal,* is available on the Internet, Human Genome Project Information, <<http:/www.ornl.gov/TechResources/Human_Genome/home.html>>.

[3] Robert Sikorski & Richard Peters, *Genomic Medicine*, 278 JAMA 1212 (1997). Available on the Internet at <<http:/www.ama-assn.org/sci-pubs/journals/archive/jama/vol_278/no_15/jjn71002.htm>>.

State of Missouri in *Shelton v. St. Anthony's Medical Center*, 781 SW2d 48 (Mo. 1989). There, the Supreme Court of Missouri held that while there could be no claim based on an allegation that but for the negligent conduct of another, a child would have been aborted, parents who allege negligence in that a physician failed to inform them sufficiently to enable them to make a judgment and give informed consent with respect to treatment could state a claim for damages such as "loss of consortium, the right to lead a normal life; . . . emotional distress, anxiety and depression." This State should likewise recognize the viability of such a cause of action.

Stare decisis is not a valid excuse for declining to recognize wrongful birth as a tort to be considered under the same rules as traditional torts.

> The rule of stare decisis is a wholesome one, but should not be used to sanctify and perpetuate error. . . . We deprecate and distrust rash innovation as much as the most conservative magistrates ought, but it has never been the doctrine of any court of last resort that the law is to be a refuge and safe asylum for all the errors that creep into it. . . . Courts, like individuals, but with more caution and deliberation, must sometimes reconsider what has been already carefully considered, and rectify their own mistakes. If this is to be done in any case, it would seem to be a case like the present. . . .

*City of Atlanta v. First Presbyterian Church*, 86 Ga. 730, 732-733 (13 SE 252) (1891). I remain convinced that this Court was in error in *Abelson*, and I believe that mistake should be rectified in this case. Accordingly, I must respectfully dissent.

DECIDED JULY 6, 1999 —
RECONSIDERATION DENIED JULY 30, 1999.

*Myles E. Eastwood*, for appellants.

*Alston & Bird, Judson Graves, Sterling G. Culpepper*, for appellees.

*Gerald R. Weber, Jr., David S. Bills, William Q. Bird, David Wm. Boone, Finch, McCranie, Brown, Hendrix & Sullivan, Ellis R. Brown, Love & Willingham, Allen S. Willingham, Traci G. Courville, Vicki M. Miller, Allen & Peters, Jonathan C. Peters, David A. Cook, James E. Carter, Cathey & Strain, Dennis T. Cathey, Edward E. Strain III, Cook & Connelly, Bobby Lee Cook, Cook, Noell, Tolley, Bates & Michael, J. Vincent Cook, Dehler & Griffin, Mark F. Dehler, Doffermyre, Shields, Canfield, Knowles & Devine, Ralph I. Knowles, Foy R. Devine, Edenfield, Cox & Classens, Gerald M. Edenfield, O. Wayne*

*Ellerbee, Robert K. Finnell, Davis, Gregory, Christy & Forehand, Hardy Gregory, Jr., Williams & Henry, Philip C. Henry, Johnson & Ward, William C. Lanham, Clark H. McGehee, Ashman, Lasky & Cooper, Jeffrey W. Lasky, Thomas W. Malone, Mark L. Stuckey, Reynolds & McArthur, W. Carl Reynolds, Savage, Herndon & Turner, Brent J. Savage, Stephens & Shuler, Charles W. Stephens, Gambrell & Stolz, Irwin W. Stolz, Jr., Walbert & Mathis, David F. Walbert, Wood & Grant, L. Lin Wood, Jr.,* amici curiae.

