**THIRD DIVISION**
**DOYLE, P. J.,**
**REESE and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 4, 2022**

# In the Court of Appeals of Georgia

A21A1539. HUFF v. THE STATE.

REESE, Judge.

Kaylee Huff appeals from an order of the Superior Court of Floyd County, denying her amended motion for new trial after a jury found her guilty of two counts of armed robbery, four counts of aggravated assault, and one count of possession of a firearm during a felony.[1] Huff argues that the trial court erred by not instructing the court reporter to transcribe the entirety of the trial proceedings, including voir dire and jury selection; committed plain error by having a bench conference outside her presence without her waiving her right to be present; and abused its discretion by denying a mistrial. For the reasons set forth infra, we affirm.

---

[1] See OCGA §§ 16-8-41 (a); 16-5-21; 16-11-106. At sentencing, the trial court found that the aggravated assault counts merged into the armed robbery counts.

Viewed in the light most favorable to the verdict,[2] the record shows the following. Anthony Friedman and G. C. were friends who lived in the same neighborhood and worked together. On July 14, 2019, Friedman and G. C. left together in Friedman's car, ultimately stopping at an abandoned house, where they were approached by a group of people and forced out of the car at gunpoint.

Friedman grabbed a long gun that was pointed at him and held onto it, believing he was about to be killed. Multiple assailants then beat Friedman, who was holding onto the gun, which went off near Friedman's car. A female assailant, later identified as Huff, held a gun to G. C.'s head and told him that he would die if he moved or tried to help Friedman. During the beating of Friedman, the assailant with the long gun kept referring to himself as "Smiley." Huff and the other assailants robbed Friedman and G. C. of personal property, including phones, wallets, cash, and shoes.

After the robbery and beating of Friedman, Huff and the other assailants told the victims to get in their car and leave. As Friedman drove away, the assailants shot out the back window of Friedman's car. Once he was home, Friedman called 911 to report the robbery.

---

[2] See *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004).

Rome police officer Robert Groover responded to the call and met with the victims, who gave him a description of the assailants. Shortly thereafter, Groover spoke to an informant, who identified "Smiley" as Christopher Haywood and told Groover where Haywood lived, which was less than 100 yards from where the robbery occurred. Groover drove to the residence, where he witnessed a woman matching the description of the female assailant "fle[e] the scene[ ]" in a silver Toyota passenger car. Groover could see that the car had several passengers, one of whom matched the description of one of the other assailants. Groover radioed a Be on the Lookout ("BOLO") for the vehicle, with descriptions of its occupants, including the name of Christopher Haywood, and giving the vehicle's location and direction of travel.

Minutes later, another officer initiated a traffic stop on the vehicle, which Huff was driving, and detained her, Christopher Haywood, co-defendant Denzel Haywood, and a third male occupant. The officer recovered from the vehicle a twelve-gauge bolt-action shotgun, a nine-millimeter cartridge, and spent shell casing for the shotgun. A Rome police investigator later executed a search warrant at the home shared by Huff and Christopher Haywood and discovered a rifle bag containing Friedman's stolen phone and bank cards.

Huff and co-defendants Christopher Haywood and Denzel Haywood were tried together. After the jury found Huff guilty of seven of the nine charges against her, she filed an amended motion for new trial, which the trial court denied after a hearing. This appeal followed.

"If counsel raise issues on appeal relating to voir dire, they also must transcribe the voir dire in order for there to be an appellate review, as an appellant carries the burden of showing error by the record."[3] Where a party fails to object to an evidentiary ruling at trial, we review such rulings for plain error.[4]

"The trial judge in passing on motions for mistrial has a broad discretion, dependent on the circumstances of each case, which will not be disturbed unless manifestly abused. Unless it is apparent that a mistrial is essential to preservation of the right of fair trial, the discretion of the trial judge will not be interfered with."[5] With these guiding principles in mind, we turn now to Huff's claims of error.

---

[3] *Bryant v. State*, 270 Ga. 266, 271 n. 18 (4) (507 SE2d 451) (1998).

[4] *Adams v. State*, 344 Ga. App. 159, 163 (1) (809 SE2d 87) (2017); see OCGA § 24-1-103 (d).

[5] *Clack v. Hasnat*, 354 Ga. App. 502, 507 (3) (841 SE2d 210) (2020) (citation and punctuation omitted).

1. Huff argues that the trial court abused its discretion and plainly erred when it failed to instruct the court reporter to take down the entirety of the voir dire and jury selection portions of the trial. Although she concedes that the trial court followed "longstanding, established precedent of the Georgia Supreme Court and [this Court,]" she "submits that Georgia courts across the board are improperly denying Appellants the right to a complete transcript of trial proceedings which by statutory definition and case precedent includes the voir dire proceedings."

OCGA § 17-8-5 (a) provides in relevant part: "[o]n the trial of all felonies the presiding judge *shall* have the testimony taken down[.]"[6] Further, under the Appellate Practice Act,[7]

> [w]here a trial in any civil or criminal case is reported by a court reporter, all motions, colloquies, objections, rulings, evidence, whether admitted or stricken on objection or otherwise, copies or summaries of all documentary evidence, the charge of the court, *and all other proceedings* which may be called in question on appeal or other posttrial procedure shall be reported; and, where the report is transcribed, all such

---

[6] (Emphasis supplied.)

[7] See OCGA § 5-6-30 et seq.

5

matters shall be included in the written transcript, it being the intention of this article that all these matters appear in the record.[8]

In *Allen v. State*, the Supreme Court of Georgia recently reaffirmed its precedent that, for defendants in non-death-penalty cases, OCGA § 17-8-5 (a) does not require a court reporter to take down or record the entirety of voir dire.[9] The court noted that in *State v. Graham*,[10] it had evaluated the predecessor statute to OCGA § 17-8-5 (a) and "held that the term 'proceedings' referred to 'objections, rulings and other matters which occur during the course of the evidence as well as any post-trial procedures,' and that the statute's requirement was met [where] the record contained the objection and court ruling made during voir dire."[11]

As in this case, the appellant in *Allen* "argued that *Graham*'s interpretation of 'proceedings' [was] no longer good law, citing several instances in which the United States Supreme Court and our Court of Appeals . . . referred to voir dire as a

---

[8] OCGA § 5-6-41 (d) (emphasis supplied).

[9] *Allen v. State*, 310 Ga. 411, 419-421 (6) (851 SE2d 541) (2020).

[10] 246 Ga. 341, 342 (271 SE2d 627) (1980).

[11] *Allen*, 310 Ga. at 420 (6) (citing *Graham*, 246 Ga. at 342-343).

proceeding."[12] The *Allen* court rejected that argument.[13] As here, none of the decisions the appellant cited actually held anything about when voir dire had to be recorded.[14] Because the *Allen* court found "no compelling reason to reconsider *Graham*'s statutory construction[,]"[15] we affirm.

2. Huff argues that the trial court plainly erred in failing either to invite her to participate in a bench conference to strike the jury or to inquire whether she waived being present at the conference.

As Huff notes, the trial court did inquire whether Huff and each of her co-defendants waived the right to be present at bench conferences. Specifically, before the trial court administered the oath to the jury and gave preliminary instructions and before counsel made opening statements, the trial court requested counsel to "confirm

---

[12] *Allen*, 310 Ga. at 420 (6).

[13] Id.

[14] See, e.g., *Press-Enterprise Co. v. Superior Court of California*, 464 U. S. 501, 510-511 (III) (104 SCt 819, 78 LE2d 629) (1984) (remanding where the trial court's orders denying public access to voir dire testimony failed to consider whether alternatives to closure of the proceedings were available).

[15] *Allen*, 310 Ga. at 420 (6); see also *Etkind v. Suarez*, 271 Ga. 352, 358 (5) (519 SE2d 210) (1999) ("Even those who regard 'stare decisis' with something less than enthusiasm recognize that the principle has even greater weight where the precedent relates to interpretation of a statute.") (citation and punctuation omitted).

on the record that [their] clients [were] in agreement that if a side bar [was] requested and allowed [they] could proceed to discuss the case outside [the defendants'] presence[.]" Huff's attorney responded that both he and Huff were "fine with it." Huff complains, however, that the trial court should have made this inquiry earlier, prior to the early bench conferences during voir dire and jury selection.

Embodied within the constitutional right to the courts is a criminal defendant's right to be present and see and hear all the proceedings which are had against him on the trial before the Court. Violations of this due process right are presumed prejudicial, and, absent a waiver by the defendant, require a new trial. . . .

The right to be present attaches at any stage of a criminal proceeding that is critical to its outcome if the defendant's presence would contribute to the fairness of the procedure. Thus, a "critical stage" of a criminal proceeding is defined as one in which the defendant's rights may be lost, defenses waived, privileges claimed or waived, or one in which the outcome of the case is substantially affected in some other way. Proceedings during which the jury is selected or modified, for example, are a critical stage at which the right to be present attaches. On the other hand, pre-trial hearings and bench conferences pertaining to purely legal issues, such as the admissibility of evidence or jury instructions, ordinarily do not implicate the right to be present.[16]

---

[16] *Brewner v. State*, 302 Ga. 6, 10 (II) (804 SE2d 94) (2017) (citations and punctuation omitted).

As discussed in Division 1, supra, the voir dire in this case was not transcribed in its entirety. However, the record indicates that the attorneys all agreed on the record that the jurors appeared to be statutorily qualified. After Denzel Haywood's attorney questioned one potential juror on the record, the trial court dismissed the juror with the consent of Huff's attorney. Similarly, after Huff's attorney questioned another prospective juror on the record, the trial court granted Huff's request to excuse that juror. Counsel then approached the bench, where they used some of their peremptory strikes to select the jury. Back on the record, the trial court called the selected jurors and then immediately dismissed them for lunch recess and resumed a hearing on Huff's motions to suppress.

Huff never voiced any disagreement with the jury selection during the motions hearing nor during the ensuing three-day trial, including when her attorney confirmed prior to the court's initial instructions to the jury that Huff was "fine with" side bar conferences being held without her presence. She thus acquiesced in counsel's waiver of her right to be present and cannot now assert error in this regard.[17]

---

[17] See *Heywood v. State*, 292 Ga. 771, 775 (3) (743 SE2d 12) (2013) (holding that the defendant acquiesced in his counsel's waiver of his right to be present).

9

3. Huff contends that the trial court abused its discretion in denying a mistrial after the State improperly introduced allegations that G. C. had been threatened.

During direct examination, G. C., who was 16 years old at the time of the robbery, testified that he thought the assailants were going to kill both him and Friedman. The following exchange took place on direct examination:

> [PROSECUTOR]: Obviously, . . . that was a scary event for you?
> [G. C.]: Yes, ma'am.
> [PROSECUTOR]: Since that has happened, have you received any messages about the incident or about testifying?
> [G. C.]: Yes, ma'am. Somebody had hit me — had texted me on Snapchat about two months — two months back.
> [HUFF'S ATTORNEY]: Your Honor, I object to relevance on this, on where this is going.

After hearing argument from the parties outside the presence of the jury, the court asked the prosecutor whether she could tie the threat to any of the defendants. When she responded that she could not tie it directly to them, the court sustained the objection and called the jury back into the courtroom.

Once the jury returned, the prosecutor immediately asked G. C. if he was scared to testify. Once he replied "I am[,]" the prosecutor ended her questioning, and Huff's attorney requested a bench conference at which time he moved for a mistrial. The

10

court denied a mistrial but instructed the jury: "Out of your hearing, an objection was made to the last question posed by the State. I will sustain that objection and direct the jury not to consider the response. You should give it no weight, whatsoever."

Huff argues on appeal that, after the trial court sustained the objection to questioning about threats to G. C., the prosecutor "still accomplished her goal by immediately asking if the witness was afraid. The logical conclusion anyone would make is that the witness was afraid because of the threats mentioned a few moments before."

However, G. C. did not testify that he had received any threat, only that someone had sent him a Snapchat message. It was unclear whether this message was about the incident or about testifying, and it was not clear what the content of the message was. The court sustained the objection and instructed the jury not to consider G. C.'s response that he was afraid to testify. Under these circumstances, and in light

11

of the timely curative instruction,[18] a mistrial was not essential to ensure a fair trial, and the trial court did not abuse its discretion in denying Huff's motion.[19]

*Judgment affirmed. Doyle, P. J., and Brown, J., concur.*

---

[18] See *Payne v. State*, 152 Ga. App. 471, 474 (4) (263 SE2d 251) (1979) ("The extent of a rebuke and instruction is within the discretion of the court, and when, as here, the improper question or remark is cured by timely corrective action calculated to preserve the defendant's right to a fair trial, then we cannot say that the court abused its discretion in refusing to grant a mistrial.") (citation and punctuation omitted).

[19] See *Norwood v. State*, 252 Ga. 292, 294 (3) (313 SE2d 98) (1984).